Dubeee, Judge,
delivered the opinion of the court:
Plaintiff and its connecting carriers transported carload shipments of ammunition for cannon with explosive projectiles, ranging in size from 40 to 90 millimeters. The shipments moved from points of origin in Oregon, California, Arizona and New Mexico to points of destination on plaintiff’s lines in New Jersey and Ohio during 1948 through 1954.
After the services were performed, plaintiff billed and was paid freight charges computed under a through single factor class 65 rate from point of origin to destination, as provided *3 in an A.A.R. Section 22 Quotation No. 14-A for carload shipments of “Ammunition, fixed or semi-fixed, for cannon with explosive projectiles.” This same commodity description was also adopted in the Government bills of lading for the shipments. This quotation rate was a special rate, agreed upon after extended negotiations between the Government and the railroads, and was not on file with the Interstate Commerce Commission. It provided for a special rate of $6.08, which was 65 percent of the established through single factor first class rate of $9.35 from origin to .destination, for ammunition, fixed or semi-fixed, for cannon. This established regular tariff rate of $9.35 was under Transcontinental Freight Tariff No. 39-H.
After payment of plaintiff’s freight bills computed under Quotation 1A-A, the Government General Accounting Office determined that plaintiff had been overpaid, and the over-payments so determined by the Government wer¿ then deducted from other amounts due plaintiff. The basis for this determination by the Government was the application of a lower rate. This lower rate was derived by a combination of two rate factors. One factor was the application of a class 65 rate under Section 22 Quotation 14-A for “Ammunition, Fixed or Semi-Fixed, for .Cannon,” from :an intermediate point (Marion, Ohio) to the point of East Coast destination. The other combined factor was a tariff commodity rate filed with the Interstate Commerce Commission, Transcontinental Freight Tariff No. 3-S, including “Cartridges, Loaded, in Boxes” as applied to the shipments from points of West Coast origin to the same intermediate point (Marion, Ohio).
This combination of the commodity rate with the Quotation 14-A rate, as computed by the Government, produces the lowest rate. If this lowest combined rate is applicable to these shipments of ammunition, the Government was entitled to. substitute it for the higher single factor Quotation 14r-A rate, under the terms of Class Tariff No. 39-H. Item No. 90 of this Class Tariff upon which the 65 percent Quotation 14-A was computed, provided:
* * * if the aggregate of separately established (joint, local and/or proportional) rates-applicable on interstate *4 traffic contained in tariffs lawfully on file with the Interstate Commerce Commission applicable via any route over which the through rates published in this tariff apply, produces a lower charge on any shipment than the rate published herein, such aggregate of rates will apply via all routes * * * over which the rates shown in this tariff are applicable and the through rate published in this tariff has no application to that shipment. * * *
The above provision is generally referred to as “The Aggregate of Intermediates rule.”
Item No. 6 of Quotation 14-A provided as follows:
Item No. 6 Charges and Allowances, is amended to read:
In the absence of specific provisions to the contrary in this Quotation, shipments made hereunder are subject to all charges and all allowances for or in respect of diversion, reconsignment, demurrage, switching, and to all other privileges, charges and rules which in any way increase or decrease the amount to be paid on any shipment or which increase or decrease the value of the service as provided in applicable tariffs on file with the Interstate Commerce Commission, or by Section 22 Quotations, without, in any case, any land-grant deduction.
Recently, in Gulf, Mobile and Ohio Railroad Company v. United States, 160 Ct. Cl. 493, 312 F. 2d 921 (February 6, 1963), we reviewed two prior decisions in Great Northern Railway Company v. United States, 156 Ct. Cl. 332, 312 F. 2d 901 (March 7, 1962), and 160 Ct. Cl. 225, 312 F. 2d 906 (January 11, 1963), as standing for the proposition that “in order to combine a Section 22 Quotation with another quotation, or with a regular tariff provision, the intention of the parties to accomplish this purpose must be apparent, either by express provision or necessary inference.”
Was such an intention for combination of rates manifested here either implicitly or explicitly ? There is nothing in Quotation IN-A expressly authorizing the use of the quotation rate as a factor in a joint tariff rate produced by'application of the “aggregate of intermediates” rule. However, defendant points to Item No. 6 of Quotation 14-A as being an expression of intent to allow combination, and argues that shipments made under Item No. 6 are subject to “all other *5 privileges, charges and rules which in any way increase o.r decrease the amount to be paid on any shipment” as provided in tariffs on file with the Interstate Commerce Commission or by Section 22 Quotation. From this, defendant goes on to argue that since the class 65 rate must be obtained from Tariff No. 39-H which is on file with the Commission, the “aggregate of intermediates” rule of Item 90 of the tariff comes into play.
In making this argument, defendant overlooks other language in Item No. 6 of the Quotation that we consider equally important. Eead in full, Item No. 6 of Quotation No. 14r-A seems to express an intent contrary to that urged by defendant.
These shipments were transported as “Explosives” under the requirements of applicable tariffs on file with the Interstate Commerce Commission. They were described in the bills of lading as “Ammunition for Camion with Explosive Projectiles,” ranging in size from 40 to 90 millimeters. The bills of lading carried the following notation:
Explosive Placard Applied
This is to certify that the above articles are properly described by name and are packed and marked and are in proper condition for transportation according to regulations _ prescribed by the Interstate Commerce Commission.
In the tariffs and supplements which were applicable at the times the several shipments here involved were transported, explosives were defined according to classes, and regulations were prescribed for handling and placing placards on cars dependent upon the classes defined.
Acceptable explosives were divided into three classes designated as follows:
Class A — Dangerous explosives; detonating or otherwise of maximum hazard.
Class B — Less dangerous explosives; inflammable hazard.
Class C — Relatively safe explosives; minimum hazard.
In all of these tariffs, Class A explosives included ammunition for cannon, and ammunition for cannon with explosive projectiles. Class C included ammunition for small arms. *6 The shipments of “Ammunition for Cannon, with Explosive Projectiles” here at issue were included under Class A as “Dangerous explosives; detonating or otherwise of maximum hazard.”
The foregoing “explosives” tariffs required description of the article in the billing by shipping name as prescribed therein. Placard endorsement thereon was required of “Explosives” for Class A explosives, but no placard endorsement was required for Class C explosives.
Detailed operating rules were provided in the “explosives” tariffs and supplements for handling cars bearing “Explosives” placard endorsements. The following are examples:
til daily records of cars to be kept?
(2) notice to train crew of “explosives” cars,
(3) placement of car in middle of through trains, not nearer than the sixteenth car from the engine, not nearer than the second car to the engine, or a caboose in service,
(4) prohibition of placement next to certain cars, such as loaded tank, wooden frame flat or gondola cars, refrigerator cars equipped with certain automatic refrigeration,
(5) prohibition of cutting off in motion, and
(6) examination of cars for hotboxes and defects.
These rules applied to Class A but not to Class C explosives.
We conclude that these requirements of the Explosives Tariff are within the meaning of Item No. 6 of Quotation 14-A entitled “Charges and Allowances.” This item provides that all shipments thereunder are subject to specified terminal charges and to “all other privileges, charges and rules which increase or decrease the value of the service as provided by applicable tariffs on file.” Clearly, the numerous shipping requirements under Class A of the applicable Explosive Tariffs “increase the value of the service,” within the meaning and intent of Item No. 6 of Quotation 14-A.
In Chicago, Burlington & Quincy Railroad Co. v. United States, 73 Ct. Cl. 250 (1931), cert. denied 287 U.S. 599, this court applied a commodity rate on “fixed ammunition” as against a higher class rate on “high explosives, viz: explosive projectiles” to shipments of ammunition for cannon with *7 explosive projectiles as being “fixed ammunition” as well as “high explosive's.” The court stated at p. 260:
* * * It is not disputed that these regulations [I.C.C. Begulations for the Transportation of Explosives and Other Dangerous Articles] were followed. As regards the shipment here in controversy they do not govern the rate, but are merely for the purpose of guarding carriers and the public generally against improper handling and shipment of explosives. United States v. Gulf Refining Co., 268 U.S. 542. * * *
In the present case, however, the requirements of the explosives tariff which “increase the value of the service” to the Government, are expressly imported into the Quotation 1A-A rate by Item No. 6 thereof. We have detailed in our findings the extensive and prolonged negotiations and correspondence between the railroads and the Government in agreeing upon the acceptance of Quotation 14-A, and the numerous amendments thereto. There can be no question as to a complete meeting of the minds between the parties upon Quotation 14-A and its purpose. This purpose included an intention to require that the commodities listed in the quotation by specific description had to conform to the specific classification of the commodities as listed' in the Explosives Tariff. The quotation listed “Ammunition, Fixed Or Semi-Fixed, for Cannon” and the Explosives Tariff listed ammunition for cannon as Class A pertaining to maximum hazard shipments. There is no provision in the Explosives Tariff for “Cartridges, Loaded.”
In Gulf, Mobile & Ohio Railroad Company v. United States, 305 I.C.C. 583 (January 30, 1959), the following stipulated issue was referred to the Interstate Commerce Commission by this court by order dated January 17, 1958 in cases Nos. 370-52 and 581-53:
Whether (a) the commodity description and rate provided in' Item 2165 Transcontinental Freight Bureau Tariff No. 3-P, or (b) the class rating provided in Item 1815 of Consolidated Freight Classification No. 15 is applicable to the shipments involved in these suits.
The Commission found that articles described in the bills of lading as “Ammunition for cannon with explosive pro *8 jectiles, fixed or semi-fixed” ranging in sizes from 40 to 105 millimeters, although, concededly “ammunition for cannon” as described in the class rating, was covered by the lower commodity tariff rate item of “Explosives, cartridges, loaded.”
Thereafter, upon stipulation, judgment was entered by order of this court, without opinion, based upon the lower commodity rate. Defendant contends that this decision of the Interstate Commerce Commission disposes of this entire case. The commodities and the commodity rate description are identical with those considered by the Commission in the Gulf case, supra, and defendant contends that decision should control here, citing Western Pacific Railroad Company v. United States, 132 Ct. Cl. 150, 153, 131 F. Supp. 921, 923 (1955) :
While it is probable that this court has jurisdiction to make a decision different from that reached by the Interstate Commerce Commission, we are not disposed to do so, unless the circumstances are very v/rmsual. The Commission has had wide experience in problems of this kind and is especially equipped to deal with them. [Emphasis supplied.]
A careful review of the record in the present case leads us to conclude that there are not only “unusual circumstances” present, but facts materially different from the Gulf case, supra. Plaintiff herein petitioned the Interstate Commerce Commission for leave to intervene in the referral proceedings. Intervention was denied because “the parties and the issues in the order of referral by the United States Court of Claims * * * are explicitly restricted to the parties before the said court, and that granting of the instant petition would unduly broaden the issues therein.” Obviously, inclusion of the present question of the application of a special Section 22 Quotation, not then before the Commission, would have broadened the issue then before the Commission. Questions of_construction of language in the present quotation rate which are entirely different from the commodity and class rates then before the Commission, must now be considered.
We might consistently consider another referral of this new issue to the Interstate Commerce Commission, but we *9 find nothing in the record by way of agreement or stipulation thereto between the parties; and no one "has raised the point in brief, exception, or argument. Moreover, there is enough before us to enable a complete examination of the problem, and we are not now required to call upon the expertise of the Commission to determine the issue.
Under Quotation 14-A the parties expressly imported the provision of the Aggregate Intermediates rate provisions as to lower combined rates, or any other published tariff rate to which the Government was lawfully entitled. By the same token, the Government is not lawfully entitled to claim a lower commodity rate in combination with the quotation rate when it has expressly agreed that all shipments under Quotation 14r-A are subject to all “privileges, charges and rules which in any way increase or decrease the value of the services as provided in applicable tariffs on file with the Interstate Commerce Commission.” This includes the tariffs andsregulations pertaining to shipment of explosives. Although these explosives tariffs “do not govern the rate” as between a commodity and a class tariff rate, as we said in Chicago, Burlington & Quincy Railroad Co., supra, the requirements of Quotation 14-A govern our determination as to whether the parties intended a combination of this quotation rate with the commodity rate. The Explosives Tariffs do not contain any classification of “Explosives, Cartridges, Loaded” as described in the commodity tariff. We do not believe that the parties could have intended any such anomalous combination of rates when they agreed upon Quotation 14-A.
Defendant also contends that a combination of rates is permitted here under Item 5 of Quotation 14-A, as amended by Amendment No. 4, which reads in part:
* * * nothing in this Quotation shall deprive the Government of the right to avail itself of. any published tariff rate to which it lawfully is entitled * * *.
We do not see how this catch-all reference can aid defendant. The Government is not “lawfully entitled” to combine the published commodity tariff with the quotation because the parties never intended such a combination. If they had, *10 they could have made it clear by adding to Item No. 5 of the quotation as amended:
or to combine this Quotation rate with any "published tariff rate to which the Government is lawfully entitled.
We note that after the extensive and voluminous negotiations between the Government and the railroads in agreeing upon Quotation 14-A and its amendments, extending from 1941 to 1947, the parties added the following item by amendment in 1954, about six months after the last shipments involved in this case:
Item No. 4y2. Combination Bates (For. purpose of Clarification)
The rates named herein are not applicable in constructing combination rates in connection with rates named in other Section 22 Quotations nor' in published tariffs, unless otherwise specifically authorized herein.
This amendment shall be in effect and applicable to all shipments moving under A.A.R.. Section 22 Quotation No. 14-A, as amended, from point of origin on and after September 15, 1954. [Emphasis supplied.]
The later amendment would not settle tbe question as to what exceptions are “specifically authorized” in. the Quotation. Nevertheless, its clai'ification of the intent of the parties is noteworthy, in view of the anomalous and esoteric maze of class tariffs, rate tariffs, explosive tariffs, “aggregate of intermediates” rules and other transportation regulations which both counsel and the court have been required to explore in order to reach a conclusion in the present case. Further clarification of intent in the negotiation of specific transportation rates by the Government and the railroads would be equally commendable, particularly if taken before, rather than after, the fact.
Having concluded that the parties never intended that the quotation rate could be combined with the commodity rate, we turn now to plaintiff’s first and principal cause of action based upon application of a through single factor class 65 rate, as provided in Section 22 Quotation 14-A for “Ammunition for Cannon, Fixed or Semi-Fixed.” This is one rate which could be applicable, but plaintiff concedes that if the commodity description of “Cartridges, loaded-in boxes” is *11 applicable to these shipments of ammunition, it is not entitled to claim this rate as the lowest applicable rate under the “Aggregate of intermediates” rule.
Reference has already been made to Gulf, Mobile & Ohio Railroad Co., supra, in which the Interstate Commerce Commission expressly ruled, upon referral by this court, that “Ammunition for Cannon with Explosive Projectiles, Fixed or Semi-Fixed,” ranging in size from 40 to 105 millimeters, was embraced within the commodity rate description of “Cartridges, loaded in boxes” in Item No. 2615 of Transcontinental Freight Tariff No. 3-P. In reaching our conclusion that the Quotation and commodity rates could not be combined, we did not pass upon the determination of the Interstate Commerce Commission that the commodity rate description of “Cartridges, loaded in boxes” was applicable to “Ammunition for Cannon with Explosive Projectiles, Fixed or Semi-Fixed,” as specified in the class rating. The parties to that case accepted this determination by the Interstate Commerce Commission, and judgment was entered accordingly by this court. While that judgment is not res judicata, as to this plaintiff, we shall again accept the expertise of the Interstate Commerce Commission in concluding that “Ammunition for Cannon, Fixed or Semi-Fixed, with Explosive Projectiles,” is embraced within the generic term “Cartridges, loaded in boxes.”
Accordingly, the through single factor Quotation rate is not the lowest applicable rate since the commodity rate is applicable as one factor in aggregating intermediate rates. The only factor available for combination with the commodity rate is the Class 75 rating in Exceptions to Official Classification Central Freight Tariff No. 490-B. The aggregate of these rates is $4.60 as compared to the through single factor quotation rate of $6.08. Consequently, the commodity rate is applicable as one factor from the point of West Coast origin to Marion, Ohio, and the Class 75 Exception rating is applicable from there to point of destination for these shipments, as the other factor. The parties have agreed that if it is decided that the freight charges should be computed on this basis, as claimed by plaintiff in the alternative, then plaintiff is due the sum of $16,297.81.
*12 Judgment is therefore entered for plaintiff in the amount of $16,297.81.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Boald A. Hogenson, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, a Pennsylvania corporation, is arid was a common carrier of freight by railroad in interstate commerce.
' 2. During the period from July 30,1948, to February 19, 1954, both inclusive, plaintiff and its connecting railroad carriers performed services for defendant by transporting carload shipments of ammunition for cannon with explosive projectiles from points of origin in Oregon, California, Arizona, New Mexico, and Utah to points of destination on plaintiff’s lines in New Jersey and Ohio.
3. The shipments moved on Government bills of lading as set forth in plaintiff’s Schedule A attached to its petition. After the performance of the transporation services by plaintiff and its connecting carriers, plaintiff as the destination carrier submitted its bills and was paid freight charges based upon the joint through class 65 rate from origin to destination, as provided in A.A.B. Section 22 Quotation No. 14-A for transportation of ammunition, fixed or semi-fixed, for cannon. Thereafter the General Accounting Office determined that plaintiff had been overpaid on the basis of application of a combination of rates, using as one factor a commodity rate on cartridges on the part of the transportation from origin to an intermediate point, and as the other factor a class 65 rate from the intermediate point to destination. The alleged overpayments were later deducted from amounts otherwise due plaintiff for other trarisportation services performed for defendant.
4. (a) Plaintiff contends that the freight charges should be computed on the basis of a through class 65 rate, as provided in A.A.B. Section 22 Quotation No. 14-A and Transcontinental Freight Tariff No. 39-H, applying from .origin to destination at the time of movement for ammunition, fixed or semi-fixed, for camion.
*13 (b) Plaintiff further contends, in the alternative, that the charges should be computed upon a combination of rates, using a commodity rate applicable to cartridges as published in Trans-Continental Freight Tariff No. 3-S, as one factor, and a class 75 exception rating and rate as published in Central Freight Tariff No. 130-C and Central Freight Tariff No. 490-B as the other factor.
(c) Defendant contends that the charges should be computed upon a combination of rates, using a commodity rate applicable to cartridges (the same rate plaintiff is using in its alternative basis) as one factor, and a class 65 rate, as provided in A.A.R. Section 22 Quotation No. 14-A and Central Freight Tariff No. 490-B, as the other factor.
(d) The parties have agreed that if it is decided that the freight charges should be computed on the basis of the through class 65 quotation rating and rate as claimed by plaintiff, then plaintiff is due the sum of $79,638.86.
(e) The parties have agreed that if it is decided that the freight charges should be computed on the basis of a combination of rates, using a commodity rate applicable to cartridges as one factor and a class 75 exception rating and rate as the other factor, as claimed by plaintiff in the alternative, then plaintiff is due the sum of $16,297.81.
(f) The parties have agreed that if it is decided that the freight charges should be computed on the basis of a combination of rates, using a commodity rate applicable to cartridges as one factor and a class 65 quotation rating and rate as the other factor, as claimed by defendant, then plaintiff is due the sum of $3,553.88.
5. The articles transported were ammunition for cannon with explosive projectiles, and were larger than 37 millimeters (1 y2 inches) in caliber. For example, the ammunition covered by plaintiff’s bill 8/228856 was for 75 millimeter rifles, by bill 8/235861 for 76 millimeter guns, by bills 8/254028 and 8/254876 for 90 millimeter guns, by bill 8/ 260537 for 60 millimeter and 40 millimeter guns, by bill 8/260538 for 40 millimeter cannon, by bill 8/262032 for 76 millimeter guns, by bills 8/305241 and 8/305268 for mortars, by bill 8/305549 for 75 millimeter rifles, by bill 8/339908 for *14 60 millimeter mortar, and bj bill 8/343082 for 75 millimeter howitzer.
6. The parties have agreed that bills of lading Nos. WW-7500472, WV-3529532, and WT-7438529 are representative of the shipments in suit. The pertinent facts contained in these bills of lading are:
(a) Government bill of lading No. WW-7500472 shows that on July 30, 1948, the agent of the Southern Pacific at Herlong, California, received 1, 404 boxes of “Ammunition, Fixed, NOIBN, for Cannon with Explosive Projectiles” from the acting transportation officer at Sierra Ordnance Depot, consigned to the supply officer, Naval Ammunition Depot, Earle, New Jersey. The routing shown on the bill of lading was Southern Pacific, Union Pacific, Chicago and Northwestern, and Pennsylvania Railroads.
(b) Government bill of lading No. WV-3529532 shows that on April 7,1949, the agent of the Atchison, Topeka and Santa Fe Railway at McCune, New Mexico, received 1,312 boxes of “Ammunition for Cannon with Explosive Projectile, (shell, fixed, w/fuze, for 76 mm guns)” consigned to the supply officer, Naval Ammunition Depot, Earle, New Jersey. The routing shown on the bill of lading was Atchi-son, Topeka and Santa Fe, Minneapolis and St. Louis, Toledo, Peoria and Western, and Pennsylvania Railroads.
(c) Government bill of lading No. WT-7438529 shows that on February 9,1951, the agent of the Atchison, Topeka and Santa Fe Railway at Bellemont, Arizona, received 477 boxes of “Ammunition for Cannon with Explosive Projectiles, 954 Rds. P5SUA” from the transportation officer, Navajo Ordnance Depot, consigned to the transportation officer, Ravenna Arsenal at Atlas, Ohio. The routing shown on the bill of lading was Atchison, Topeka and Santa Fe, Minneapolis and St. Louis, Toledo, Peoria and Western, and Pennsylvania Railroads.
(d) All three representative bills of lading carried the following notation:
Explosive Placard Applied
This is to certify that the above articles are properly described by name and are packed and marked and are in proper condition for transportation according to *15 regulations prescribed by the Interstate Commerce Commission.
.7. By letter dated November 5,1941, addressed to the Association of American Bailroads, Bear Admiral Bay Spear, Bureau of Supplies and Accounts, Navy Department, requested adjustment of rates on fixed ammunition for cannon by transcontinental lines and rail carriers in Southern, Southwestern and Western Trunk Line Territory to make effective within those territories the same basis of rates on bombs, mines, warheads, detonating fuzes, loaded projectiles and fixed ammunition as were applicable on TNT and smokeless powder, with a carload minimum rate on 50,000 pounds.
8. By letter dated July 22, 1942, addressed to the President of the Association of American Bailroads, Joseph B. Eastman, Director of the Office of Defense Transportation, requested the formation of a committee of Eastern, Western, and Southern lines with authority to negotiate rate adjustments involved in connection with the movement of war traffic.
9. The committee of the Association of American Bail-roads was formed as requested, and as a result of the work of the committee, A.A.B. Section 22 Quotation No. 1A-A, dated December 7, 1942, was framed and transmitted to the Chief of Transportation, War Department, and to the Bureau of Supplies and Accounts, Navy Department.
10. Signed by the vice president of the Association of American Bailroads, and addressed to the above-mentioned offices of the War and Navy Department, A.A.B. Section 22 Quotation No. 14r-A provided:
For and on behalf of the carriers by railroad parties to Consolidated Freight Classification No. 15, I am authorized to and do hereby quote and offer to the United States Government, pursuant to Section 22 of the Interstate Commerce Act, the transportation services hereinafter described, for the charges and under the terms and conditions herein stated:

Item No. 1. Traffic Covered

The Traffic covered by and subject to this quotation is the commodities listed in Item No. 2 when originating at and consigned to points in continental United States, *16 and moving all-rail, in carloads, under Government bills of lading.

Item No. List of 0ommodities

Ammunition, explosive, incendiary or gas, smoke or tear producing, viz :
Ammunition, fixed or semi-fixed, for cannon; Bangalore Torpedoes;
Bombs, Mines or Depth Charges;
Boosters, Bursters, Detonating Fuzes or Detonators;
Cartridge Cases, Cannon, empty primed;
Fuzes, combination, percussion, tracer, time or mine;
Grenades, hand or rifle;
Percussion Caps;
Primers;
Projectiles;
War Heads.
Gases, poison.
Grenades, hand or rifle, practice._
Torpedoes, aircraft or submarine, without explosives, self-propelling.
Explosives, viz:
Caps, blasting or electric blasting;
High Explosives, noibn herein;
Low Explosives, including black powder; Nitro-cellulose, dry;
Nitro-starch, dry;
Picric Acid;
Safety Squibs;
Smokeless Powder;
Tri-Nitrotoluol;
Wet Fulminate of Mercury.
Military Pyrotechnics or fireworks.

Item No. 3. Bates to be Applied

Subject to compliance with all the terms and conditions of this quotation, on each shipment of the kind referred to in Item No. 2, the railroads will apply rates as follows:
(a) Within and between Eastern, Southern, Southwestern and Western Trunk Line Territories and the northern section of Minnesota and the Dakotas, 65 per cent of first class, minimum weight 50,000 pounds:
(b) From Trans-Continental lettered groups or origin “M” to “A”, inclusive, to points in Pacific Coast Territory named in Trans-Continental Class.Rate Tar *17 iffs Nos. 38 and 39 series, 65 per cent of first class, minimum weight 50,000 pounds;
(c) From Pacific Coast origins to lettered destination Groups “I”, “J” and east thereof, as shown in Trans-Continental Eastbound Class Rate. Tariffs Nos. 38 and 39 series, and Territorial Directories governing-same, Nos. 40 and 41 series, 65 per cent of first class, minimum weight 50,000 pounds.
Item No. /. Routing and Oircwity Limitations
The rates to be applied, as provided herein, are subject to all routing, circuity and other restrictions applicable in connection with the published class, column or commodity rates from point of origin to destination applicable over the route of movement.

Item No. 5. Land-Gram,t Deductions

No rate or charge applicable on any shipment moving under this quotation shall be subject to any land-grant deduction.

Item No. 6. Charges and Allowances

Shipments made under this quotation are subject to all charges and all allowances for or in respect of diversion, reconsignment, arbitraries? demurrage, inspection, switching, and to all other privileges, charges and rules which in any way increase or decrease the amount to be paid on any shipment or which increase or decrease the value of the service, without, in any case, any land-grant deduction.

Item No. 7. Payment of Charges

All charges, including diversion, reconsignment, and/ or switching charges, if any, will be paid by the Government promptly upon presentation of bills therefor.

Item No. 8. Termination of Quotation

This quotation may be cancelled by written notice of not less than sixty (60) days mailed by either party to the other except as to shipments made from original point of shipment before the effective date of such notice and except as to any accrued rights and liabilities of either party hereunder.

Item No. 9. Acceptance of Quotation

This quotation when accepted by the United States Government by making any shipment under the terms *18 hereof or otherwise, will constitute an agreement between the parties hereto as to the transportation services herein described.
11. The War Department by Major R. M. Boyd, Chief, Freight Branch, Transportation Corps, by letter dated December 9, 1942, advised the Association of American Railroads that this quotation had been recorded and copies had been filed with the Finance Officer, Transportation Division, U.S. Army, and with the General Accounting Office.
12. Rear Admiral W. B. Young, Bureau of Supplies and Accounts, Navy Department, by letter dated December 16, 1942, advised the Association of American Railroads that the quotation was accepted on behalf of the Navy Department.
13. By circular letter, dated January 29, 1943, the Association of American Railroads advised the chief accounting officers and chief traffic officers of its member railroads with respect to the letters mentioned in findings 11 and 12 that the conclusion had been reached by its committee that “these informal forms of acceptances of Section 22 Quotations are satisfactory on the theory that the tender by the War Department or the Navy Department of shipments under Section 22 Quotations constitutes formal acceptance thereof.”
14. By Amendment No. 4, dated January 5, 1944, and transmitted by the Association of American Railroads to the Chief of Transportation, War Department, and to the Bureau of Supplies and Accounts, Navy Department, Item No. 5 of Quotation No. 14 — A was amended as follows :
Item No. 5, Land-Grcmt Deductions, is amended to read:
The rates provided under this Quotation are special rates not available to commercial shippers and are, therefore, not subject to any deduction on account of land
S’ant, but nothing in this Quotation shall deprive the ovemment of the right to avail itself of any published tariff rate to which it lawfully is entitled, less any lawfully applicable land-grant deduction.
•15. By Amendment No. 5, dated July 24, 1944, transmitted from and to the same parties as the previous amendment, Item No. 6 of Quotation No. 14-A was amended as follows:
*19 Item No. 6, Charges and Allowances, is amended to read:
In tbe absence of specific provisions to the contrary in this Quotation, shipments made hereunder are subject to all charges and all allowances for or in respect of diversion, reconsignment, demurrage, switching, and to all other privileges, charges and rules which in any way increase or decrease the amount to be paid on any shipment or which increase or decrease the value of the service as provided in applicable tariffs on file with the Interstate Commerce Commission, or by Section 22 Quotations, without, in any case, any land-grant deduction.
16. Amendment No. 5 to the Quotation was accepted for the Navy Department and recorded as information by the Army which furnished copies to the Finance Office, U.S. Army, and the General Accounting Office in accordance with advice to the Association of American Railroads by said departments by letters dated August 3, 1944, and July 29, 1944, respectively.
17. By Amendment No. 19, dated December 26, 1946, transmitted from and to the same parties as the previous amendments, Item No. 3 of Quotation No. 14-A was amended in pertinent parts as follows:
Item No. 3, Bates to be Applied, as amended by Amendments Nos. 2, 3, 8, 15, 16 and 17, is amended further to read:
Subject to compliance with all the terms and conditions of this Quotation, on each shipment of the kind referred to in Item No. 2, the railroads will apply rates as follows:
(a) Within and between Official (including I.F.A.), Southern, Southwestern and Western Trunk Line territories and the northern section of Minnesota and the Dakotas:
s¡* *i* •!*
On shipments on and after July 1, 1946 class or column 65 (where class or column 65 is not published, 65 per cent of first class, fractions less than —drop, 1/2‡ or over — convert to the next higher full cent), in effect by tariff on the date of shipment from point of origin, subject to carload minimum weight 50,000 pounds.
Between Official (including I.F.A.), Southern, Southwestern and Western Trunk Line territories and the northern section of Minnesota and the Dakotas and *20 Colorado common points and points in Colorado east thereof, on the one hand, and points in Wyoming, points in Utah east or north of points named in Trans-Continental Freight Bureau Class Rate Tariff No. 39, and points in Idaho and Montana, east of points named in Trans-Continental Freight Bureau Class Rate Tariff No. 38, on the other hand;
* * * * *
On shipments on and after July 1, 1946, class or column 65 (where class or column 65 is not published, 65 per cent of first class, fractions less than —drop, y$ or over — convert to the next higher full cent), in effect by tariff on the date of shipment from point of origin, subject to carload minimum weight 50,000 pounds.
(b) From Trans-Continental lettered groups of origin “M” to “A”, inclusive, to points in Pacific Coast territory named in Trans-Continental Class Rate Tariffs Nos. 38 and 39 series:
ijt ‡ % %
On shipments on and after July 1, 1946, class or column 65 (where class or column 65 is not published, 65 per cent of first class, fractions less than y2$ — drop, or over — convert to the next higher full cent), in effect by tariff on the date of shipment from point of origin, subject to carload minimum weight 50,000 pounds.
(c) From Pacific Coast origins to lettered destination Groups “I”, “J” and east thereof, as shown in Transcontinental Eastbound Class Rate Tariffs Nos. 38 and 39 series, and Territorial Directories governing same, Nos. 40 and 41 series:
*1» *{»
On shipments on and after July 1, 1946, class or column 65 (where class or column 65 is not published, 65 per cent of first class, fractions, less than y2$ — drop, y2<$ or over — convert to the next higher full cent), in effect by tariff on the date of shipment from point of origin, subject to carload minimum weight 50,000 pounds.
18. By letter dated February 3, 1947, the War Department advised the Association of American Railroads that Amendment No. 19 to the Quotation was recorded by the Army and that copies were furnished the Finance Officer, U.S. Army, the General Accounting Office, and other interested offices of the War Department.
*21 19. By letter dated February 3, 1947, the Navy Department advised the Association of American Railroads that Amendment No. 19 to the Quotation was acknowledged and that copies were furnished the General Accounting Office and others interested.
20. By Amendment No. 34, dated August 2, 1954, almost 6 months after the last shipment involved in this case, but transmitted from and to the same parties as the previous amendments, the following item was added to Quotation No. 14-A:
Item No. 4%. Combination Rates
(For the purpose of Clarification)
The rates named herein are not applicable in constructing combination rates in connection with rates named in other Section 22 Quotations nor in published tariffs, unless otherwise specifically authorized herein.
This amendment shall be in effect and applicable to all shipments moving under A.A.R. Section 22 Quotation No. 14-A, as amended, from point of origin on and after September 15,1954.
21. The definition of “fixed ammunition” in Webster’s New International Dictionary, Second Edition, Unabridged, 1947, is “Ammunition in which the projectile is permanently attached to a case which contains the primer and the propellant.”
22. By application of Item No. 3(c) of Quotation No. 14-A, as amended by Amendment No. 19, the rate for transportation of the first representative shipment from Herlong, California, to Marion, Ohio, would be $5.40 per hundred pounds. This rate would be determined by using the class 65 rating provided in the said item and applying the rating to the rate basis therefor in Trans-Continental Freight Tariff No. 39-H. This class tariff provided a first class rate, as increased, of $8.30 per hundred pounds, and 65 percent thereof would be a rate of $5.40.
23. By application of Item No. 3(a) of Quotation No. 14 — A., as amended by Amendment No. 19, the rate for transportation of the first representative shipment within “Official” territory, from Marion, Ohio, to Earle, New Jersey, would be $1.47 per hundred pounds. This rate would be *22 determined by using the class 65 rating provided in the item and applying the rating to the rate basis therefor in Central Freight Tariff No. 490-B plus increases. This is the rate which the defendant contends is applicable as a second factor in its combination of rates from origin to destination.
24. The total charge calculated as two separate factors under Quotation No. 14-A, as described in findings 22 and 23, one from Herlong, California, to Marion, Ohio, and the other from Marion, Ohio, to Earle, New Jersey, would be $6.87 per hundred pounds.
25. The through one-factor rate calculated according to Item No. 3(c) of Quotation No. 14-A, as amended by Amendment No. 19, as applied to Trans-Continental Freight Tariff No. 39-H, from Herlong, California, to Earle, New Jersey, would be $6.08. This is the rate claimed by the plaintiff on its theory set forth in finding 4(a). This through rate is 79 cents less than the two-factor combination of rates above referred to under Quotation No. 14-A.
26. Quotation No. 14-A and its amendments were not filed with the Interstate Commerce Commission.
27. Item No. 90 of Trans-Continental Freight Bureau Class Tariff No. 39-H published rules and regulations pertaining to the aggregate of intermediate rates clause of Section 4 of the Interstate Commerce Act (49 U.S.C. § 4) and reads in pertinent part:
* * * if the aggregate of separately established (joint, local and/or proportional) rates applicable on interstate traffic contained in tariffs lawfully on file with the Interstate Commerce Commission applicable via any route over which the through rates published in this tariff apply, produces a lower charge on any shipment than the rate published herein, such aggregate of rates will apply via all routes * * * over which the rates shown in this tariff are applicable and the through rate published in this tariff has no application to that shipment. * * *
28. Tariff Circular 20 containing regulations, effective October 1, 1928, issued by the Interstate Commerce Commission under authority of Section 6 of the Interstate Commerce Act, as amended, to govern the construction and filing of freight rate schedules and classifications by common car *23 riers, as defined in the Act, contains the following part of the first paragraph of Rule 10:
Terminal and special services
10. (a) Each carrier or its agent shall publish, post, and file tariffs which shall contain in clear, plain, and specific form and terms all the rules governing and rates and charges for demurrage, switching, floating, lighter-age, wharfage, and other terminal services, storage, transfer and drayage, weighing, diversion, reconsignment, icing, refrigeration, heat, elevation, feeding, grazing, and other transit services, absorptions, allowances, and all other charges and rules which in any way increase or decrease the amount to be paid on any shipment, or which increase or decrease the value of the service to the shipper. Tariffs authorizing such services, or providing charges therefor or for the absorption of such charges, must clearly show their application in connection with traffic moving under less-than-carload or any quantity rates.
29. Rule 56(a) of Tariff Circular 20 reads as follows:
56. Reduction of Rate To Equal the Aggregate of the Intermediate Rates.- — (a) Section 4 of the act, as amended, prohibits the charging of any greater compensation as a through rate than the aggregate of the intermediate rates that are subject to the act. The commission has frequently held that through rates which are in excess of the sum of intermediate rates between the same points via the same route are prima facie unreasonable. Many informal complaints are received in connection with regularly established through rates which are in excess of the sum of the intermediate rates between the same points. The commission has no authority to change or fix a rate except after full hearing. It is believed to be proper for the commission to say that if called upon to formally pass upon a case of this nature it would be its policy to consider a rate which is higher than the aggregate of the intermediate rates between the same points via the same route as prima facie unreasonable and that the burden of proof would be upon the carrier to defend such unreasonable rate.
30. If the commodity rate on cartridges does not apply to the articles shipped in this case, the lowest applicable rate is the through one-factor rate, described in finding 25.
*24 If tlie commodity rate on cartridges is applicable, the parties each contend that a two-factor combination of rates is applicable. The parties use the same first factor, covering the transportation from point of origin to Marion, Ohio, that is, the commodity rate on cartridges provided in Item No. 4475 of Continental Freight Tariff No. 3-S. As to the second factor, covering the transportation from Marion, Ohio, to destination, they are in disagreement. This latter territory is that designated as “Official” in Item No. 3(a) of Quotation No. 14-A, Amendment No. 19.
For the second factor in its combination of rates, plaintiff uses the applicable exception to the classification rating for transportation from Marion, Ohio, to destination, that is, the class 75 rating in Exceptions to Official Classification, Central Freight Tariff No. 130-C, as applied to the class rate in Central Freight Tariff No. 490-B.
If the commodity rate on cartridges is applicable, the combination of rates contended for by the plaintiff in its alternate claim is the lowest applicable rate in this case unless it is decided that the defendant is entitled to its claimed combination of rates.
Defendant applies as its second factor in its combination of rates the rating of 65 percent of the first class rate, provided in Quotation No. 14-A, for the pertinent transportation area, as applied to the class rate in Central Freight Tariff No. 490-B.
If the commodity rate on cartridges is applicable, the remaining issue is whether the rule of aggregate of intermediate rates and/or Quotation No. 14-A, as amended, entitle defendant to its claimed combination of a Section 22 Quotation rating with a commodity rate.
31. Aside from the question as to whether or not the rule of aggregate of intermediate rates and Item No. 3(a) of Quotation 14-A, as amended, would permit a combination of a Section 22 Quotation rating with a commodity rate, the defendant’s tariff expert testified in this case that he found no language in the quotation which restricted the use of a Section 22 Quotation rating in combination with a commodity rate, and that it Was his opinion that the following language in Item No. 6 of Quotation No. 14-A, as amended, made *25 available to the defendant in accordance with its theory the application of the rule of aggregate of intermediate rates in combining the Section 22 Quotation rating with the commodity rate:
* * * and to all other privileges, charges and rules which in any way increase or decrease the amount to be paid on any shipment or which increase or decrease the value of the service as provided in applicable tariffs on file with the Interstate Commerce Commission, or by Section 22 Quotations, without, in any case, any land-grant deduction.
32. On January 30, 1959, Division 3 of the Interstate Commerce Commission decided in Gulf, Mobile & Ohio Railroad Company v. United States of America, Docket No. 32379, 305 I.C.C. 583, that “Ammunition for cannon with explosive projectile, fixed or semi-fixed,” ranging in sizes from 40 to 105 millimeters, were embraced within the commodity rate description of “Cartridges, loaded, in boxes” in Item No. 2165 of Trans-Continental Freight Tariff No. 3-P.
This decision was made in a proceeding instituted by petition filed February 17, 1958, by Gulf, Mobile & Ohio Railroad Company pursuant to an order of the United States Court of Claims, dated January 17, 1958, in its cases Nos. 370-52 and 581-53, both entitled Gulf, Mobile c& Ohio Railroad Company v. United States, referring such cases to the Interstate Commerce Commission for a determination as to whether a class rate or a commodity rate was applicable to the shipments in question.
33. Upon the referral by the United States Court of Claims of its cases Nos. 370-52 and 581-53 to the Interstate Commerce Commission, plaintiff herein and other Eastern Territory railroads petitioned the Interstate Commerce Commission for leave to intervene in the referral proceeding, but the I.C.C. denied the petition for intervention “for the reason that the parties and the issues in the order of referral by the United States Court of Claims, dated January 17, 1958, in cases Nos. 370-52 and 581-53 are explicitly restricted to the parties before the said Court, and that granting of the instant petition would unduly broaden the issues therein.”
*26 34, Articles described as “Ammunition” were listed in the applicable classifications with carload ratings as follows:

Carload Item No. Articles ratings

1800 AMMUNITION, Explosive, Incendiary or Gas, Smoke or Tear Producing, see Note 1, item 1805:
1805 Note 1. — Subject to Bule 89, except that Section 16, page 58 of Agent H. A. Campbell’s Tariff I.C.O. No. 4, in so far as it authorizes shipments to be made in accordance with regulations of the War and Navy Departments shall be applicable only to CL shipments.
1810 Ammunition, fixed, for cannon, with empty, sand-loaded or solid projectile, loose or in packages— 4
1815 Ammunition, fixed, noibn, for cannon, loose or in packages _ 1
1820 Bombs or mines, loose or in packages- 1
1825 Boosters or detonating fuzes, loose or in packages- 1
1830 Cartridge cases (cartridge shells), cannon, empty, primed, loose or in packages- 3
1835 Cartridges, cannon, blank, loose or in packages- 4
1840 Cartridges, small arms, blank or loaded, noibn, in boxes _4 — 5—4
1845 Fuzes, combination percussion, tracer or time, loose or in packages_ 3
1850 Grenades, hand or rifle, loose or in packages- 1
1855 Percussion caps, in boxes_ 3
1860 Primers, cannon or small arms, in boxes- 3
1865 Projectiles, for cannon, loose or in packages_ 1
35. Articles described as “explosives” were listed in the applicable consolidated classifications with carload ratings as follows:

Carload Item No. Articles ratings

16335 EXPLOSIVES, see Buie 39:
16345 Caps, blasting or electric blasting, see Note 1, item 16440, in boxes_ 1
16350 Fuse, safety, in packages_B26-4-4
16355 High explosives, noibn, see Note 1, item 16440, in barrels or boxes_1-75-1
16360 Low explosives, noibn, including black powder, in barrels, boxes or powder kegs_1-75-1
16365 Nitro-cellulose, dry, see Note 1, item 16440, in boxes_ 1
16380 Nitro-starch, dry, see Note 1, item 16440, in barrels or boxes_ 1
16395 Picric acid (high explosive), dry, see Note 1, item 16440, in barrels or boxes_ 1
16400 Picric acid (high explosive), wet with not less than 10% of water, in barrels or boxes_ 3
16405 Powder, smokeless, deteriorated or obsolete, immersed in water, in barrels, or boxes; also CL, in tank cars, Buie 35_45-5-A
16410 Powder, smokeless for cannon, in barrels, boxes, powder kegs or in packages 530 or 572_2-1-1
16415 Powder, smokeless for small arms, in barrels, boxes or powder kegs_ 1

*27
Carload Item No. Articles ratings

16420 Safety squibs, in barrels or boxes- 3
16425 Trinitrotoluol, dry, see Note 1, item 16440, in barrels or boxes_ 1
16430 Trinitrotoluol, wet with not less than 10% of water, in barrels or boxes- 3
16435 Wet fulminate of mercury, see Note 1, item 16440, in barrels_ 1
16440 Note 1. — The minimum charge for each LCL shipment shall be for 100 lbs. at prescribed rating * * *
36. The applicable exceptions to the classification contained in Central Freight Tariff No. 130-C contain ratings from Marion, Ohio, to Earle, New Jersey, as follows:
COMMODITIES
Carloads except as otherwise indicated

Item No. Bating

2350 Ammunition, explosive, incendiary or gas, smoke or tear producing (see Note A) :
Ammunition, fixed, for small arms, with explosive bullets
Ammunition, fixed, noibn in Official Classification, for cannon Class 75
sjs # >jt :Je jfc
Note A — Subject to Rule 39 of Official Classification, except that Section 16, page 58 of Agent W. S. Topping’s Tariff No. 4,1.C.C. No. 4 (supplements thereto or reissues thereof), in so far as it authorizes shipments to be made in accordance with regulations of the War and Navy Departments shall be applicable.
4790 Explosives, viz.:
Caps, blasting or electric blasting, in boxes,
High, noibn in Official Classification, in barrels or boxes,
Low, noibn in Official Classification, including Black Powder, in barrels, boxes or powder kegs,
Powder:
Smokeless for Cannon, in barrels, boxes or powder kegs, or in metal cylinders, 20 gauge or thinner, in crates, or 19 gauge or thicker, loose or in crates,
Smokeless for Small Arms, in barrels, boxes or powder kegs,
Wet Fulminate of Mercury, in barrels.
Nitro-cellulose, dry, in boxes,
Nitro-stareh, dry, in barrels or boxes,
Acid, picric (high explosive), dry, in barrels or boxes,

*28
Item. No. Rating

4790 Explosives, viz. — Continued
Trinitrotoluol, dry, in barrels or boxes, Shipping containers, marking and packing requirements for, and handling and transportation of these commodities must be in accordance with the Rules and Regulations prescribed in Agent W. S. Topping’s Freight Tariff No. 4, I.C.C. No. 4.
Safety Squibs, Electric Squibs, Igniters, or Electric Igniters in barrels or boxes. Class 75
37. Tbe article “Cartridges, loaded, in boxes” as contained in the applicable commodity tariffs (Trans-Continental Freight Tariff No. 8-S) is an item under the general heading of explosives and appears therein as follows:

Item No. Articles

4470 EXPLOSIVES, viz:
Acid, picric (high explosive), dry, in barrels or boxes, Caps, blasting or electric blasting,
Explosives, high, N.O.I.B.N., in barrels or boxes, Explosives, low, N.O.I.B.N., including Black Powder, in barrels, boxes or powder kegs,
Igniters,
Igniters, electric,
Nitro-cellulose, dry, in boxes,
Nitro-starch, dry in barrels or boxes,
Powder, smokeless, for cannon, in packages as prescribed in Western Classification,
Powder, smokeless, for small arms, in barrels, boxes or powder kegs,
Squibs, safety,
Trinitrotoluol, dry, in barrels or boxes,
Wet Fulminate of Mercury, in barrels.
In straight or mixed carloads.
4475 Cartridges, loaded, in boxes.
4480 Fuse, in packages.
4485 Powder, black, brown, grey or smokeless, in boxes or iron kegs. In straight or mixed carloads.
38. As provided in Trans-Continental Freight Tariff No. 3-S (Commodity Rates), the carload rate in cents per 100 pounds from points taking rate basis one (including Her-long, California) to various eastbound points, was 349 for explosives listed in Item No. 4470 to those points taking group rates D to J, inclusive, and such rate was 190 for cartridges listed in Item No. 4475 to points taking group rates C, C-l, D to I inclusive, and M, and 178 to 5 points.
39. Ammunition was listed as an article in the applicable commodity tariffs as follows:
*29 Item No.
3200 Ammunition, viz:
Explosives for cannon (Subject to Item 654), viz: Fixed with empty, sand loaded or solid projectiles or without projectiles,
‡ ‡ ‡ &
Item No. 654 referred to therein is as follows:
Item Transportation of Explosives
No. and other Dangerous
654 Articles by Freight.
Shipping containers, marking and packing requirements for, and handling and transportation of Explosives and Dangerous Articles other than Explosives, must be in accordance with the Rules and Regulations prescribed in Agent H. A. Campbell’s Freight Tariff No. 4 (I.C.C. No. 4), when handled by rail, and in Agent H. A. Campbell’s Freight Tariff No. 6 (I.C.C. No. 6), when handled on freight and freight and passenger vessels by water.
40. The pertinent parts of Rule 39 of the applicable classifications are the following:
Explosives or other dangerous articles will only be handled and transported by: 1. Rail carriers, parties to these classifications in accordance with rules and regulations prescribed by the Interstate Commerce Commission as published in Agent H. A. Campbell’s Freight Tariff No. 4, I.C.C. No. 4, supplements thereof and reissues thereof.
❖ * ‡ iji *
If description provided in Bureau of Explosive Tariff, Agent FI. A. Campbell’s I.C.C. No. 4, supplements thereto and reissues thereof, differs from description contained in Classification, Exception or Commodity tariff, Bureau of Explosives description on shipping orders and bills of lading must be shown first and other description immediately thereafter in parenthesis.
41. The Interstate Commerce Commission Regulations for Transportation of Explosives prescribed under the Act of March 4,1921, were contained in tariffs in which the railroads transporting the shipments involved were named as participating carriers and which were issued by Agent Topping in Tariff No. 4, effective January 7,1941, and at certain times thereafter by Agent Campbell by supplements to the said tariffs.
*30 In the tariffs and supplements which were applicable at the times the several shipments here involved were transported, explosives were defined according to classes, and regulations were prescribed for handling and placing placards on cars dependent upon the classes defined.
Acceptable explosives were divided into three classes designated as follows:
Class A — Dangerous explosives; detonating or otherwise of maximum hazard.
Class B — Less dangerous explosives; inflammable hazard.
Class C — Relatively safe explosives; minimum hazard.
This classification was stated in Topping’s Tariff No. 4, effective January 7, 1941, Rule 51. This rule became Rule 52 in Supplement No. 24 to Campbell’s Tariff No. 4, dated May 15, 1950, and was contained in Paragraph 73.52 of Campbell’s Tariff No. 8, effective April 15,1951.
In all of these tariffs, Class A explosives included ammunition for cannon, and ammunition for cannon with explosive projectiles. Class C included ammunition for small arms.
42. Ammunition for cannon was defined in Topping’s Tariff No. 4, effective January 7, 1941, as all fixed or separate loading ammunition of 37 millimeter (1% inches) caliber and larger which is fired from a cannon, gun, or mortar, as distinguished from ammunition fired from a device such as a pistol, revolver, rifle, shotgun or similar firearms.
The same definition was continued in Campbell’s Tariff No. 4, Supplement No. 24, effective May 15, 1950.
Ammunition for cannon was defined in Campbell’s Tariff No. 8, effective April 15, 1951, as fixed, semi-fixed or separate loading ammunition which is fired from a cannon, mortar, gun or howitzer.
This last definition was continued in Supplement No. 1 to Campbell’s Tariff No. 8, effective August 21, 1951, with the addition at the end of “recoilless rifle.”
This last definition with “recoilless rifle” added was the same in Supplement No. 4 to Campbell’s Tariff No. 8, effective May 8,1952.
*31 43. Ammunition for cannon with explosive projectiles was defined in Topping’s Tariff No. 4, effective January 7, 1941, as fixed ammunition assembled in a unit consisting of the cartridge case containing the propelling charge and primer, and the projectiles, or shell, fuzed or unfuzed.
The same definition was continued in Campbell’s Tariff No. 4, Supplement 24, effective May 15, 1950, and in Campbell’s Tariff No. 8, effective on April 15,1951.
44. Ammunition for small arms was defined in Topping’s Tariff No. 4, effective January 7, 1941, which designated Class C explosives as “Relatively Safe Explosives,” as including all fixed ammunition, Class C, such as used in pistols, revolvers, rifles, shotguns, and similar firearms, or in machine guns, with non-explosive bullets, and consists usually of a paper or metallic cartridge case, the primer, and the propelling powder charge, with or without shot, bullet (except explosive bullets) tear gas material or pyrotechnics, the component parts necessary for one firing being all in one assembly.
The same definition was continued in Campbell’s Tariff No. 4, Supplement 24, effective May 15, 1950, except that after “Class C” the words “of caliber less than 37 mm.” were added.
The same definition was continued in Campbell’s Tariff No. 4, Supplement No. 24, effective May 15, 1950, except that after “Class C” the words “of caliber less than 37 mm.” were added.
The definition in Supplement No. 26 of Campbell’s Tariff No. 4, effective December 31, 1950 was as follows: “Small arms ammunition designed to be fired from a pistol, revolver, rifle, or shot gun held by hand or by hand and shoulder, is fixed ammunition consisting of a metallic or paper cartridge case, a primer and a propelling charge, with or without bullet or shot, tear gas material, or pyrotechnics.”
The definition in Supplement No. 1 to Campbell’s Tariff No. 8, effective August 21,1951 was as follows: “Small arms ammunition, designed to be fired from a pistol, revolver, rifle, or shot gun held by the hand or by the hand and shoulder, or machine gun of caliber less than .75, is fixed ammunition consisting of a metallic or paper cartridge case, a *32 primer and a propelling charge, with or without bullet, shot, tear gas material, or tracer components, but not including bullets loaded with high explosives or incendiary compositions or mixtures.”
45. The foregoing “explosives” tariffs required description of the article in the billing by shipping name as prescribed therein. Placard endorsement thereon was required of “Explosives” for Class A explosives, but no placard endorsement was required for Class C explosives.
,46. Detailed operating rules were provided in the “explosives” tariffs and supplements for handling cars bearing “Explosives” placard endorsements, for example, the following:
(1) daily records of cars to be kept,
(2) notice to train crew of “explosives” cars,
(3) placement of car in middle of through trains, not nearer than the sixteenth car from the engine, not nearer than the second car to the engine, or a caboose in service,
(4) prohibition of placement next to certain cars, such as loaded tank, wooden frame flat or gondola cars, refrigerator cars equipped with certain automatic refrigeration,
(5) prohibition of cutting off in motion, and
(6) examination of cars for hotboxes and defects.
These rules applied to Class A but not Class C explosives.
47. Class rates based upon the classification ratings are the maximum rates that may be charged a shipper. They are filed with the Interstate Commerce Commission. If a shipper desires to obtain a reduction in the class rate, he presents his proposal to the pertinent railroad carriers. If granted, the lower rate becomes either an “exception” rate or a “commodity” rate. Such lower rates must be filed with the Interstate Commerce Commission and must be posted for public inspection at all places where the carriers receive shipments for transportation to inform shippers as to the applicable rates.
No such posting or publication is involved in the issuance of Section 22 Quotations by carriers to the defendant.
CONCLuSION OK LAW
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes as a matter *33 of law that plaintiff is entitled to recover on its claim, and and it is therefore adjudged and ordered that plaintiff recover of and from the United States the sum of sixteen thousand two hundred ninety seven dollars and eighty one cents ($16,297.81), arrived at through aggregating the commodity rate on cartridges with the Class 75 rating in Exceptions to Official Classification Central Freight Tariff No. 490-B.