**GULF, MOBILE AND OHIO RAILROAD COMPANY**

v.

**The UNITED STATES.**

No. 9–55.

United States Court of Claims.

Feb. 6, 1963.

John L. Hamilton, Washington, D. C., for plaintiff. George E. Hamilton, Jr., Roman J. Gerber, and Hamilton & Hamilton, Washington, D. C., were on the brief.

Lewis A. Dille, Kensington, Md., with whom was Acting Asst. Atty. Gen., Joseph D. Guilfoyle, for defendant.

DURFEE, Judge.

Plaintiff and its connecting carriers transported and delivered carload shipments of ammunition from inland points of origin to ports of embarkation at New Orleans and Braithwaite, Louisiana, during the period February to December, 1943. The carloads were first shipped to inland storage depots at Bynum, Alabama; Fort Estill, Kentucky; and Milan, Tennessee. Reshipment was later made from there to an Ammunition Back-Up Storage Depot located at Spann, Louisiana, a local station on plaintiff's railroad. Here the shipments were again stopped by order of the Government, and later transported to the ports to be transported by ship to overseas destinations. During the time these shipments were in storage at the inland storage points and the Spann Back-Up Depot, they were not in the custody, control or possession of the carriers. The carriers regained such custody, control and possession upon reshipment from these inland storage points and from the Spann Back-Up Depot. Upon arrival at the second transit stop at the Spann Back-Up Depot, the inbound bills of lading were surrendered and freight charges paid, and new bills of lading were issued for the movement from Spann to the port.

In assessing freight charges involved in this suit, plaintiff used one or the other of the following bases (whichever produced the lowest charges): (a) local rate from original point of shipment to the inland storage point, plus the through rate from such inland storage point to the port with one transit stop privilege

at Spann, plus transit and other charges provided under and by authority of American Railroads Section 22 Quotation No. 40–A, or (b) a combination of local rates constructed from point of origin via the inland storage point and the back-up storage point at Spann, less applicable land-grant deductions.

A Section 22 Quotation rate is a special rate tender authorized under 49 U. S.C. § 22, different from the regular published tariff rate in order to establish reduced or free rates for a special purpose.

Defendant claims that the freight charges should be computed on the basis of a through rate applicable from point of origin, via the inland storage point, thence via the back-up storage point at Spann to the port, plus a transit charge and other miscellaneous charges where applicable under the separate provisions of Section 22 Quotations Nos. 31-Series and 40-Series.

Necessary to the decision of this claim is an understanding of the clear distinction in purpose between the designation of the inland storage depots in Quotation No. 31-Series and the designation of the back-up depots in Quotation No. 40–A, and the accompanying privilege to stop in transit provided in each quotation.

The "storage depots" designated in Quotation No. 31-Series were the three inland storage depots in Alabama, Kentucky and Tennessee, but not the back-up depot at Spann, Louisiana. As fast as the munitions for World War II were produced, they were shipped to these inland storage depots. The storage in transit at these inland storage depots, as provided in this quotation, was for the purpose of moving the ammunition from points of production to avoid interference with production schedules; to keep ammunition out of the port areas pending availability of shipping space; to replenish stocks of inland depots located near the port areas, and to take care of shipments diverted in transit. The storage in transit at these inland stations was also for the purpose of enabling defendant to unload the contents of each car, store them, and where necessary, to repaint the projectiles, to box, rebox, crate, re-crate, or mark the articles or to replace any defective assemblies on the projectiles before reshipment to the ports. From the stocks thus assembled, specific overseas needs were then shipped by rail to the port.

Some ports did not have sufficient rail and pier facilities to permit the handling of the specific shipments direct from the inland storage depots hereinabove described, and it was necessary to establish back-up depots near the ports, but outside the port area, where shipments could be temporarily held in cars and funneled into the port as ship and pier space became available.

At Government request, the designation of the Government storage plant at Oyster Point, Virginia, from an inland storage point under the Quotation No. 31-Series was changed to a back-up depot under Quotation No. 40–A and Spann, Louisiana was also designated therein as a back-up depot. Spann was a local railroad station 36 miles from New Orleans, and shipments were held there temporarily in cars until ordered to the port.

Quotation No. 31-Series first provided that shipments consigned to designated inland storage depots for storage, and subsequently shipped by rail to the port, could be stopped in transit at one of these inland storage depots designated. Later, Quotation No. 31-Series was amended to limit each shipment thereunder to being stopped in transit at not more than two of the designated inland storage depots.

Quotation No. 40–A Series defined and specified Back-Up Depots:

"A back-up depot is defined as a depot located near to and serving a port of transshipment to which Government shipments of commodities listed in Item No. 3 may be returned from such nearby port for temporary storage pending later reshipment to such port for transshipment."

The back-up depots at which the privileges herein provided for are available are:

"Oyster Point, Va. (Serving Newport News, Va.) Maynard, Mass. (Serving Boston, Mass.)"

Spann, Louisiana (serving New Orleans, La.) was added by amendment. This quotation provided one transit privilege to stop each shipment to a port at one of the back-up depots designated (in this case at Spann). The traffic covered in this quotation as set forth in our findings differed materially from the traffic covered in Quotation No. 31-Series except as to point of origin and final rail destination at the port, and the privilege of stopping in transit in each quotation was limited to the traffic covered in each quotation.

Quotation No. 31-Series covered traffic consigned from point of origin to one of the specified inland storage depots, and subsequently reshipped to the port. Not more than two transit stops at these inland storage points were authorized.

The traffic covered under Quotation No. 40–A was restricted to shipments consigned from point of origin to or intended for the port, which was either returned to a back-up depot for storage and then reshipped to the port, diverted or stopped at a back-up depot for storage and later reshipped to the port, or initially consigned to the back-up depot for storage and later reshipped to the port served by the back-up depot.

The position taken by defendant is that Quotation No. 40–A Series and No. 31-Series are different, and each was independent of the other. With this position, we agree. As a corollary, however, defendant also urges that the combined provisions of the two quotations permit two separate stops in transit for one shipment from point of origin to the port for the purpose of the through rate it proposes, and that the restriction in each quotation to one transit stop privilege does not operate to preclude the benefit of a different and additional transit stop privilege available in the other quotation.

In Union Pacific Railroad Co. v. United States, Ct.Cl., 287 F.2d 593 (decided March 1, 1961), this court held that two Section 22 Quotations could be combined when the only way to give meaning to one quotation was to say that the quotation was meant to give to the Government the lowest applicable rate, which could only be through a combination with another quotation, and that the parties must have so intended. The court there cited A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co. et al. (C.A. 8), 212 F.2d 812 (1954), to the effect that in interpreting tariff schedules made under Interstate Commerce Commission tariff rules, the rules would be construed as to carry out the intention of the parties, resolving any doubts in favor of the shipper.

The above case was recently cited in Great Northern Railway Co. v. United States, Ct.Cl., 312 F.2d 901 (decided March 7, 1962), to the effect that a Section 22 Quotation rate may be combined with another quotation rate to produce an aggregate lower than the through rate

"if [it] reveals an intention that it may be so used, * * *. And perhaps * * * a quotation rate may also be combined with a local tariff if the quotation is designed to be used in that manner." (p. 903)

However, the court there held that under the facts in that case, the Government was not entitled to combine a Section 22 Quotation with a tariff rate in order to defeat the application of a single factor through rate.

The Great Northern case, supra, was more recently cited in another Great Northern Railway Co. v. United States case, Ct.Cl., 312 F.2d 906 (decided January 11, 1963). The court distinguished the two cases on the facts as to the particular rate structure involved, but in denying defendant's counterclaim, it pointed out the absence of any provision in the Section 22 Quotation involved indicating an intention that it was designed to be used in combination with a local tariff.

Part of the rationale in each of these three opinions by this court was that in order to combine a Section 22 Quotation with another quotation, or with a regular tariff provision, the intention of the parties to accomplish this purpose must be apparent, either by express provision or necessary inference.

In this connection, we observe that transit is a privilege that must be specifically authorized, and cannot be inferred. When a transit privilege is given by express authorization in a tariff or quotation, all conditions and limitations prescribed with reference to it must be strictly observed. Chicago, B. & Q. R. Co. v. E. Bernier & Sons, Inc., 56 F. Supp. 691, (D.C.Minn., 1944); Chicago & N. W. R. Co. v. Connor Lumber & Land Co., 212 F.2d 712, (C.A. 7, 1954). The express terms of the two quotations are at such complete variance with each other in the limitations of traffic covered and transit privileges as to rebut any inference or conclusion that they are complementary or that the transit privilege in one is subject to combination or interchange with the other.

In the present case, there is no express provision in either quotation which indicates that the provisions of one quotation, including transit privilege, may be combined with the other. Throughout the period of the shipments involved, it appears that the railroads concluded that each of these two quotations was independent and separate of the other, and that the transit privileges provided could not be combined to provide one transit stop at an inland storage depot, and a second transit stop at a back-up depot for one shipment at a through rate from point of origin to the port. The railroads notified the Government of this conclusion on September 11, 1943 during the period of these shipments. Thereafter, at the request of the Government, the two quotations were each amended, and express provision was made in each quotation for the privilege of one inland storage depot transit stop, and one back-up depot transit for one shipment. These amendments were not issued until February 3, 1944,—over a month after the last of the shipments involved in this case, and were not applicable thereto. These last amendments were not made retroactive as to the prior shipments involved herein, or as to the bills of lading already paid.

During the entire period of the shipments involved, the Government accepted and paid the bills of lading under the rates assessed by plaintiff. Although the Government requested and negotiated some changes in both quotations during the period involved, it does not appear that the Government ever requested a change in the quotations to provide for both a back-up depot transit stop privilege and an inland storage depot transit stop privilege for the purpose of a single through-export rate until after the year in which the shipments involved were transported.

We conclude that there are no facts in this case to indicate or reveal an intention by the parties that either of these quotations could be combined with the other for the purpose of combining the different traffic covered and the different transit stop privileges provided in each quotation in order to accomplish a through-export rate from point of origin to the final port destination. Any presumption or inference in favor of the shipper in construing the two quotations is overcome by the facts hereinabove stated which reveal a clear intent and understanding by both parties during the period of the shipments involved, which is contrary to the position now urged by the Government.

We further conclude that the method of computation by the Government on the basis of a through rate applicable from point of origin, via the inland storage point, under A.A.R. Section 22 Quotation No. 31-Series, thence via the back-up storage depot under A.A.R. Section 22 Quotation No. 40-Series, plus a transit charge at each storage point, plus a back-haul or out-of-line charge where applicable, plus miscellaneous charges, does not comply with the limitations of either or both of these quotations as to

traffic covered and transit stop privileges, and that the charges assessed by plaintiff for the shipments involved are correct.

The parties have agreed that if the freight charges should be computed on the basis urged by plaintiff, the net amount that would be due plaintiff on the disputed shipments is the sum of $7,658.75. Judgment will be entered for plaintiff in this amount.

JONES, Chief Judge, DAVIS and LARAMORE, Judges, and REED, Justice (Ret.), sitting by designation, concur.