Per Curiam:
This case was referred to Trial Commissioner Kichard Arens with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinon filed on May 15, 1967. Plaintiff has filed no exceptions to or brief on this report and the time for so filing, pursuant to the Eules of the court, has expired. Defendant filed a notice of intention to except and, on July 18,1967, filed a motion to withdraw its notice of intention to except and its consent to the entry of judgment, wherein it consents to the entry of judgment in the sum of $9,771.17 and states that plaintiff’s counsel has informed defendant that it has no objection to the granting of the motion. On July 26, 1967, plaintiff moved for judgment pursuant to the commissioner’s report. Since the court agrees with the commissioner’s findings, opinion and recommended conclusion of law, as hereinafter set forth, it grants defendant’s motion to withdraw its notice of intention to except, grants plaintiff’s motion for judgment, and hereby adopts the opinion as the basis for its judgment in this case without oral argument. Plaintiff is, therefore, entitled to recover and judgment is entered for plaintiff in the sum of $9,771.17.
OPINION OF COMMISSIONER*
Arens, Commissioner: The sole question herein presented for determination is the proper transportation charges on *317 shipments of ammunition originally transported by plaintiff over its lines from West Burlington, Iowa, to Belmont, Arizona, or McCune, New Mexico, where the shipments were stored in transit under authority of EC-WTA Section 22 Quotation No. 82 Series for a period of two to four years and subsequently reshipped to Port Chicago, California, for exportation overseas.
It is plaintiff’s position that the proper charges should be predicated on the joint through single factor first-class rate[1] published in Transcontinental Freight Bureau Tariff 38 Series, reduced to 55% of first class under the authority of EC-WTA Section 22 Quotation No. 76 Series, plus the applicable transit charge contained in EC-WTA Section 22 Quotation No. 82 Series. It is defendant’s position that the proper charges should be determined by an aggregate of intermediate rates created by combining a joint single factor rate from point of origin to Mystic, California, published in Transcontinental Freight Bureau Tariff 38 Series and a local rate from Mystic to destination, published in Pacific South-coast Freight Bureau Tariff 255 Series, reduced to 55% of first class under the authority of EC-WTA Section 22 Quotation No. 76 Series, plus the applicable transit charges in EC-WTA Section 22 Quotation No. 82 Series.
The charges contended for by plaintiff were originally paid by defendant’s disbursing officers in accordance with 49 U.S.C. 66, but upon post audit by the General Accounting Office, defendant asserted overpayment claims against plaintiff and, in most instances, deducted the amounts from other bills due plaintiff and, in other instances, plaintiff made refunds under protest. Plaintiff seeks to recover the amounts so deducted or refunded.
The parties stipulated that there is due plaintiff the sum of $1,780.99 on the shipments in suit which are not in controversy, and that on the shipments which are in controversy if plaintiff prevails it would be entitled to judgment in the amount of $7,990.18, or a judgment in the total amount of $9,771.17; but that if defendant prevails on the shipments *318 which are in controversy, judgment should be entered for plaintiff in the sum of $4,706.97.
Pertinent provisions of Transcontinental Freight Bureau Class Tariff No. 38-H, in effect at the time of the shipments, are as follows:
A. T.C.F.B. Class Tariff 38-H
Section 1
Class Kates to or from Points in Arizona, British Columbia, California, Idaho, Nevada, New Mexico, Oregon or Washington_
Special Notice
(a) Through rates constructed on the basis authorized in Item 505 apply when resulting in lower charges than the rates published in this section of this tariff as applying on the same traffic.
$ $ * ‡ *
AGGREGATE OF INTERMEDIATE KATES
Item 505-D
* * * if the aggregate of separately established (joint, local and/or proportional) rates applicable on interstate traffic contained in tariffs lawfully on file with the Interstate Commerce Commission applicable via any route over which the through rates published in this tariff apply, produces a lower charge on any shipment than the rate published herein, such aggregate of rates will apply via all routes * * * over which the rates shown in this tariff are applicable and the through rate published in this tariff has no application to that shipment. * * * * *
Terminal or Transit Privileges or Services
‡ * * ❖ * Item 1005
In the absence of specific provisions in this tariff to the contrary, shipments transported under this tariff will be entitled to such allowances and privileges and subject to such charges, rules and regulations of originating carriers parties to this tariff for property while in their possession, and of any of the intermediate or delivering carriers parties to this tariff, for property while in their *319 possession, as are provided in tariffs lawfully in effect and on file with the Interstate Commerce Commission as to interstate traffic * * * for terminal or transit privileges.
EC-WTA Section 22 Quotation No. 82-A was in effect at the time of the shipments herein and extended to the Government transit privileges requested by defendant for the storage of commodities shipped herein. Pertinent Items are as follows:
Item No. 7

Bates and Charges To Be Af plied Through Bate

(b) When reshipped from the transit point after twelve (12) months * * * from the date of the inbound freight bill:
Each shipment made from its initial point or port of origin shall be subject and entitled to the through all-rail carload rate * * * from such point or port of origin to the port, destination or railhead, applicable from such point or port of origin over the route of movement via the transit point * * * on traffic destined to a port or point described in (a), (b), (c), or (d) of Item No. 1, as the case may be, in effect by tariff or as provided in any applicable. Quotation * * * on the date of shipment from initial point or port of origin, or on the date of reshipment from the transit point * * * whichever is higher, but in no case less than the minimum rate (or rates) provided in Item No. 8, plus:
(1) the transit charge (or charges) provided in Item No. 9, and
(2) all other charges, without limitation, including diversion, reconsignment and/or switching charges, if any, as provided in this or other applicable Quotations or in tariffs.
(c) Except as otherwise provided in this Item the through rate, as provided in this Item, is subject to all routing, circuity and other similar restrictions applicable in connection with the published class rates from initial point or port of origin to the port, destination or railhead, as defined in Item No. 1, applicable over the route of movement via the transit point.
* * * * *
*320 Item No. IB.

Routing

No application herein contained stall affect the integrity of the through rate insofar as the applicable routes are concerned. The routes in effect on the date of shipment from initial point or port of origin via the transit point (or points) to port, destination or rail-head will apply.
# * * * * Item No. 21.

Condition Under Which Transit Privilege Is Applicable

The application of the transit privilege (or privileges) is conditioned upon adherence 'by the Government to the provisions 'hereof.
EC-WTA Section 22 Quotation No. 76 was in effect at the time of the shipments herein and was used by both parties to reduce to 55% the applicable first-class charges on the commodities herein. Pertinent Items are as follows:
Item No. 3.

Rates To Be Applied

Each shipment of the kind described in Item No. 2 shall be subject and entitled to all-rail 'carload rates as follows:
$ ‡ ‡ $ Section E
On trans-continental traffic between Eastern Groups A to N, inclusive, except points in Southern Freight Association territory * * * and points in Pacific Coast territory named in TCFB Class Eate Tariff No. 38-H, Tariff Publishing Officer W. J. Prueter’s I.C.C. No. 1549,. apply rates made fifty-five (55) percent of the published through single-factor first-class rate as published in TCFB Class Eate Tariff No. 38-PI, Tariff Publishing Officer W. J. Prueter’s I.C.C. No. 1549, or combination of first-class rates where factors used in constructing such combination of first-class rates are governed by Consolidated Freight Classification No. 21, minimum weight 60,000 pounds.
% iji í|í ijc
Item No. 4.

Routing and Oircuity Limitations

* * * the rates herein provided on each shipment of the kind described in Item No. 1 are subject to all rout *321 ing, 'circuity and other restrictions applicable in connection with published class, column or commodity rates ■from point of origin to destination, applicable over the route of movement.
* * * * * Item No. 9.

Combination Rates

Except as otherwise provided herein, the rates provided herein are not applicable in constructing combination rates in connection with rates named in other Quotations nor in published tariffs.
The crucial issue is whether,, under the above-quoted tariff and quotations defendant is entitled to construct rates which are not over the route of movement. If so, defendant prevails; otherwise, plaintiff prevails. The mileage over the route of movement is 2,304 miles, while the mileage via the constructive route advocated by defendant is 2,169 miles or 135 miles less. Defendant contends that it was entitled to employ the above-quoted provisions of Item 505-D of T.C.F.B. Class Tariff 38-H to derive a lower charge, that under the above-quoted provisions of Item No. 7 (b) of EC-WTA Section 22 Quotation No. 82-A, the constructive route, while not over the route of movement, is applicable over the route of movement, and that under the above-quoted provisions of Section E of EC-WTA Section 22 Quotation No. 76, defendant was entitled to apply a combination of first-class rates. Plaintiff contends that Item 505-D of T.C.F.B. Class Tariff 38-H is not applicable because Item 1005 of the Tariff requires the employment of transit quotation EC-WTA Section 22 Quotation No. 82-A which, in turn, provides that the rate has to be over the route of movement. Plaintiff further contends that the words “combination of rates” means rates over the route of movement, and therefore defendant could not apply a combination of first-class rates.
The facts are not disputed and it is clear that the issue here involves a construction of published tariffs and presents purely a question of law. Great Northern Ry. v. United States, 173 Ct. Cl. 453, 352 F. 2d 375 (1965). Basic canons of construction of contracts, applicable to the above-quoted documents, require that the intent of the parties be gathered from the whole of the documents involved. W. G. Cornell Co. *322 v. United States, 179 Ct. Cl. 651, 376 F. 2d 299 (1967); Hughes Transportation Inc. v. United States, 169 Ct. Cl. 63 (1965). The terms used in tariffs, unless specially defined, must be given their ordinary commercial meaning as ordinarily understood in the particular trade or industry. Great Northern Ry., supra.
Applying the foregoing principles, it is obvious that when the Government requested and accepted the transit privileges under EC-WTA Section 22 Quotation No. 82-A, it bound itself, under Item No. 7 (b) to pay the rate “applicable from such point or port of origin over the route of movement via the transit point.” It would be strained and unnatural to construe this unambiguous language to mean other than that the rate to be applied must be computed over the actual route of movement, and defendant has cited no authority to the effect that the language employed has a different meaning peculiar to the transportation industry. When a transit privilege is given by express authorization in a tariff or quotation, all conditions and limitations prescribed with reference to it must be strictly observed. Gulf, Mobile and Ohio R.R. v. United States, 160 Ct. Cl. 493, 312 F. 2d 921 (1963). It is clear that the provision for an aggregate of intermediate rates, contained in EC-WTA Section 22 Quotation No. 82-A is not applicable because Item No. 7(c) of the Quotation specifically restricts the through rate to all routing and circuity restrictions applicable over the route of movement via the transit point. Finally, we come to the meaning of the words “combination of first-class rates” as they appear in Section E of EC-WTA Section 22 Quotation No. 76. The weight of the evidence at the trial establishes that within the transportation industry, the term “combination of rates” means rates made over the actual route of movement. It follows therefore that defendant was not entitled to apply a combination of first-class rates.
It is, accordingly, concluded that plaintiff should prevail on its theory of the case and is entitled to judgment in the amount of nine thousand seven hundred seventy-one dollars and seventeen cents ($9,771.17).
*323 FINDINGS op Fact
1. Plaintiff is a corporation of tbe State of Kansas and is a common carrier by railroad on its own lines and jointly with other common carriers by railroads.
2. From 1957 to 1961, inclusive, plaintiff, as the final and delivering carrier, performed transportation services for defendant from various points of origin in the United States to destination points on plaintiff’s lines. The freight charges for said services were billed by plaintiff and were originally paid 'by defendant’s disbursing officers in accordance with 49 U.S.C. 66. Upon post audit by the General Accounting Office, defendant asserted overpayment claims against the plaintiff and, in most instances, deducted the amounts from other bills due plaintiff and, in other instances, plaintiff made refunds under protest. Plaintiff seeks to recover the amounts so deducted or refunded.
3. The parties stipulated and agreed that there is no controversy on certain items herein and that plaintiff is due the sum of $1,780.99 on such items.
4. (a) The sole issue presented for determination is the proper transportation charges on shipments of ammunition for cannon originally transported from West Burlington, Iowa, to Belmont, Arizona, or McCune, New Mexico, where they were stored in transit under authority of EC-WTA Section 22 Quotation No. 82 Series for a period of two to four years and subsequently reshipped to Port Chicago, California, for exportation overseas.
(b) It is plaintiff’s position that the proper charges for the shipments of the ammunition for cannon should be predicated on the joint through single factor first-class rate published in Transcontinental Freight Bureau Tariff 38 Series, reduced to 55 % of first class under the authority of EC-WTA Section 22 Quotation No. 76 Series, plus the applicable transit charge contained in EC-WTA Section 22 Quotation No. 82 Series.
(c) It is defendant’s position that the proper charges should be determined by an aggregate of intermediate rates created by combining a joint single factor rate from point of *324 origin, to Mystic, California, published in Transcontinental Freight Bureau Tariff 38 Series and a local rate from Mystic to destination, published in Pacific Southcoast Freight Bureau Tariff 255 Series, reduced to 55% of first class under the authority of EC-WTA Section 22 Quotation No. 76 Series, plus the applicable transit charges in EC-WTA Section 22 Quotation No. 82 Series.
5. Pertinent provisions of Transcontinental Freight Bureau Class Tariff No. 38-H, in effect at the time of the shipments, are as follows:
A. T.C.F.B. Class Tariff 38-H Section 1
Class Kates to or from Points in Arizona, British Columbia, California, Idaho, Nevada, New Mexico, Oregon or Washington
Special Notice
(a) Through rates constructed on the basis authorized in Item 505 apply when resulting in lower charges than the rates published in this section of this tariff as applying on the same traffic.
# * # * * AGGREGATE OP INTERMEDIATE KATES
Item 505-D
* * * if the aggregate of separately established (joint, local and/or proportional) rates applicable on interstate traffic contained in tariffs lawfully on file with the Interstate Commerce Commission applicable via any route over which the through rates published in this tariff apply, produces a lower charge on any shipment than the rate published herein, such aggregate of rates will apply via all routes * * * over which the rates shown in this tariff are applicable and the through rate published in this tariff has no application to that shipment.
^ *]•
TERMINAL OR TRANSIT PRIVILEGES OR SERVICES
*325 Item 1005
In tbe absence of specific provisions in this tariff to the contrary, shipments transported under this tariff will be entitled to such allowances and privileges and subject to such charges, rules and regulations of originating carriers parties to this tariff for property while in their possession, and of any of the intermediate or delivering carriers parties to this tariff, for property while in their possession, as are provided in tariffs lawfully in effect and on file with the Interstate Commerce Commission as to interstate traffic * * * for terminal or transit privileges.
6. EC-WTA Section 22 Quotation No. 82-A was in effect at the time of the shipments herein and extended to the Government transit privileges requested 'by defendant for the storage of commodities shipped herein. Pertinent Items are as follows:
Item No. 7

Bates and Charges To Be Applied Through Bate

* * * * $
(b) When reshipped from the transit point after twelve (12) months * * * from the date of the inbound freight bill:
Each shipment made from its initial point or port of origin shall be subject and entitled to the through all-rail carload rate * * * from such point or port of origin to the port, destination or railhead,, applicable from such point or port of origin over the route of movement via the transit point * * * on traffic destined to a port or point described in (a), (b), (c), or (d) of Item No. 1, as the case may be, in effect by tariff or as provided in any applicable Quotation * * * on the date of shipment from initial point or port of origin, or on the date of reshipment from the transit point * * * whichever is higher, but in no case less than the minimum rate (or rates) provided in Item No. 8, plus:
(1) the transit charge (or charges) provided in Item No. 9, and
(2) all other charges, without limitation, including diversion, reconsignment and/or switching charges, if any, as provided in this or other applicable Quotations or in tariffs.
*326 (c) Except as otherwise provided in this Item the through rate, as provided in this Item, is subject to all routing, circuity and other similar restrictions applicable in connection with the published class rates. from initial point or port of origin to the port, destination or railhead, as denned in Item No. 1, applicable over the route of movement via the transit point.
***** Item No. 13.

Routing

No application herein contained shall affect the integrity of the through rate insofar as the applicable routes are concerned. The routes in effect on the date of shipment from initial point or port of origin via the transit point (or points) to port, destination or railhead will apply.
Item No. 21.

Condition Under Which Transit Privilege Is Applicable

The application of the transit privilege (or privileges) is conditioned upon adherence by the Government to the provisions hereof.
7» EC-WTA Section 22 Quotation No. 76 was in effect at the time of the shipments herein and was used :by both parties to reduce to 55% the applicable first-class charges on the commodities herein. Pertinent Items are as follows:
Item No. 3.

Rates To Be Applied

Each shipment of the kind described in Item No. 2 shall be subject and entitled to all-rail carload rates as follows:
***** Section E
On trans-continental traffic between Eastern Groups A to N, inclusive, except points in Southern Freight Association territory * * * and points in Pacific Coast territory named in TCFB Class Eate Tariff No. 38-H, Tariff Publishing Officer W. J. Prueter’s I.C.C. No. 1549, apply rates made fifty-five (55) percent of the published through single-factor first-class rate as published in *327 TCFB Class Bate Tariff No. 38-H, Tariff Publishing Officer W. J. Prueter’s I.C.C. No. 1549, or combination of first-class rates where factors used in constructing such combination of first-class rates are governed by Consolidated Freight Classification No. 21, minimum weight 60,000 pounds.
‡ 5^ ‡ 5¡*
Item No. 4.

Routing and Oireuity Limitations

* * * the rates herein provided on each shipment of the kind described in Item No. 1 are subject to all routing, circuity and other restrictions applicable in connection with published class, column or commodity rates from point of origin to destination, applicable over the route of movement.
:}: :j: $ ^
Item No. 9.

Combination Rates

Except as otherwise provided herein, the rates provided 'herein are not applicable in constructing combination rates in connection with rates named in other Quotations nor in published tariffs.
8. At the time the shipments here involved moved, there was in effect and published a circular of the Interstate Commerce Commission called Tariff Circular No. 20, which set forth “Kules To Govern The Construction And Filing of Flat-Rate Publications Including Pipe Line Schedules In Classifications.” These rules denominated “Administrative Rulings,” contain the following:
(a) Rule 14(c). Rates for through shipments are often made by adding together two or more rates. All rates used in making combination through rates for interstate shipments, including rates between points in one State, must be filed with the commission and posted at stations and can only be changed as to such traffic in accordance with the terms of the act.
(b) Rule 55 (a). A rate named from, origin to destination only legal rate. — When a rate, whether local or joint, from point of origin to destination, has been established via a route, it becomes the only legal rate for through transportation via that Toute, whether it is greater or less than the aggregate of intermediate rates.
*328 (5). If no rate is named from point of origin to destination of a shipment via the route of movement, the lowest combination of rates applicable via the route of movement is the legal rate. * * *
(<?). If, in applying combination rates on a through shipment, the shipment moves from a point of origin (or to a point of destination) intermediate to a base point upon which the lowest combination makes, or moves via a junction point with connecting or branch line intermediate to the base point upon which the lowest combination makes, such combination must ‘be applied; and it is not necessary to haul the shipment to such base point and back again through (or to) such intermediate point of origin (or destination), or such intermediate junction point; 'provided (1) that the rates used in such combination are applicable over the route the shipment would have moved had it been hauled to the base point and back again over the same routeg and (2) that compliance with routing instructions will permit movement to the base point and back again over the same route.
NOTE.- — This rule does not authorize equalizing via one route or gateway the combination of rates applicable over another route or via a different gateway, and does not confer any authority to depart from the provisions of the fourth section of the act, which prohibits higher charges for shorter than for longer distances over the same route and higher charges than the aggregate of the intermediate rates over the same route. It must also be understood that in a case where the lowest combination of rates makes on a base point as to which the port of origin or of destination is directly intermediate, a specific rate to or from such point that is higher than such combination is included in the commission’s ruling that a through rate that is higher than the combination of intermediate rates between the same points is prima facie unreasonable. It must be further understood that in applying the lowest combination authorized in this section the commission expresses no opinion as to the reasonableness of the rate so constructed.
9. The following definitions of transportation terminology are pertinent to the issues of this case:
(a) Freight Classification — A tariff publication containing a list of articles to each of which is assigned a class or category for the purpose of applying class rates, together with the governing rules and regulations.
(b) Class Bate — The amount of money per unit of traffic carried applicable to a commodity taking a par *329 ticular class rating determined from the freight classification. It is the primary rate for all commodities that move in transportation.
(c) Single Factor First Glass Rate — A first class rate comprising a single factor applicable between two points. When agreed to by more than one carrier the single factor rate becomes a j oint single factor rate.
(d) Combination of First Class Rates — The sum of two or more first class rate factors applying between two points via the route of movement is a combination rate.
(e) Through, Rate — A charge in cents per 100 pounds for the complete service in moving traffic from origin to destination. A through rate may be a local rate, a joint rate or a combination of separately established rates. When joint it is a rate applying over the lines of two or more carriers, and is made by arrangement or agreement. When local it applies wholly on the lines of one railroad. A through rate may be a combination through rate or a single factor through rate. It is a single factor rate when it is published as a unit or a single sum in cents per 100 pounds from origin to destination. A combination through rate is a charge for the through movement determined by adding separately established rates applying from and to points intermediate between origin and destination. A combination through rate applies over a route when there is no single factor rate applying between origin and destination over a route.
(f) Section M Quotation — A special rate tender authorized under 49 U.S.C. 22 by which the carrier offers transportation services to special persons free or at reduced rates from those provided for under published tariffs.
10. (a) At the trial, plaintiff presented as an expert witness, its Auditor of Freight Accounts, who testified in computing the charges for the shipments of ammunition for cannon herein, plaintiff applied joint single factor first-class rate in T.C.F.B. Tariff No. 38-H plus the applicable transit charge in EC-WTA Section 22 Quotation No. 82 reduced to 55% of first class on the authority of EC-WTA Section 22 Quotation No. 76; that this was the lowest applicable charge for the shipments herein; and that Item 505-D of T.C.F.B. 38-H was not applicable for the reason that EC-WTA Section 22 Quotation No. 82 required that the rate be computed via the transit point and that the reduced rate offered to the Government by the carriers in EC-WTA Section 22 Quota *330 tion No. 76 could be applied only to a single factor first-class rate or a combination of first-class rates made by the transit point and that an aggregate of intermediate rates was not a combination rate for the reason that it ivas not created via the route of movement.
(b) Defendant presented as an expert witness, a transportation specialist from the Transportation Division of the General Accounting Office, who explained the audit procedure of that office; that the Government predicated its charges on the aggregate of intermediate rate for the reason that it produced a lower charge from origin to destination than that asserted by plaintiff; that the aggregate of intermediate rate was computed over a route that was not the route of movement. On cross-examination, defendant’s expert witness stated that Quotation No. 82-A contained a restriction on the transited shipments herein that the rate must be applicable via the transit point and that the rate applied by the Government was not made via the transit point but was in his opinion applicable by the transit point; that in his opinion an aggregate of intermediate rate was a combination rate even though the combination was not determined via the route of movement; that generally as a word of art the first class “combination rate,” is composed of factors made by the route of movement; that Item 1005 of T.C.F.B. 38-H required the Government to comply with the rules and regulations of the tariff or quotation that granted a transit privilege; that the transit privilege and transportation service requested by the Government on the shipments herein could not have been performed by plaintiff via the route defendant computed the rate; and that the Government must assume the burdens and restrictions of EC-WTA Quotation Nos. 82 and 76-A if it wants the benefits provided by these quotations.
11. The parties agreed and stipulated that if plaintiff prevails in its theory of the proper charges for the shipments herein, plaintiff is due the sum of $7,990.18 on the items in controversy and the sum of $1,780.99 on the items not in controversy, and that there would be due the plaintiff the sum of $9,771.17; that if defendant prevails on its theory of the proper charges, plaintiff is due the sum of $2,925.98 on *331 the items in controversy and that judgment should be entered for plaintiff in the sum of $4,706.97.
CONCLUSION OK Law
Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover of and from the United States and judgment is, therefore, entered for plaintiff in the amount of nine thousand seven hundred seventy-one dollars and seventeen cents ($9,771.17).

The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

 For definitions of transportation terminology pertinent to tlie issues of tliis case see finding 9.