**GENERAL MOTORS CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants,

and

**Union Pacific Railroad Company et al.,**
Intervening Defendants.

Civ. A. No. 36254.

United States District Court,
E. D. Michigan, S. D.

April 20, 1973.

Benson T. Buck, Detroit, Mich., for plaintiff.

Geraldine R. Keyes, ICC, Hattie L. Baldwin, Dept. of Justice, Washington, D.C., Lewis M. Slater, Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., for defendants.

William P. Higgens, Omaha, Neb., for intervening defendants.

## OPINION AND ORDER

GUBOW, District Judge.

This is an action to set aside and annul orders of the INTERSTATE COMMERCE COMMISSION dated October 8, 1970 and February 23, 1971, involving the payment of money claimed by Plaintiff from certain Common Carriers by railroad. The suit is brought pursuant to Title 28 U.S.C. § 1336 and § 1398 and Title 49 U.S.C. § 17(9). Intervening Defendants are various railroads which were Defendants in the Commission proceeding and which were permitted to intervene in this action pursuant to Title 28 U.S.C. § 2353.

The Plaintiff is seeking a return of money paid to the railroads as a charge for the transportation of certain household appliances. Plaintiff attacks the applicability of the rates charged by Defendant, their reasonableness, and the adequacy of the procedures employed by the Commission in concluding that Plaintiff's challenge was without merit.

Resolution of the issues in this case necessarily requires the utilization of various terms of art in railroad rate-making. It is useful at the outset to define some of these terms.

A shipper wishing to transport a given commodity from a point of origin to an intermediate point for handling, and then from the intermediate point to a destination point, might ordinarily expect to pay two separate shipping charges: one for shipment to the intermediate point and another for shipment from the intermediate point to the point of destination. The total payment would be made pursuant to what are known as "combination rates". However, carrier tariffs commonly provide "transit privileges" for such shipments, in effect charging as if the shipment had been made directly from the point of origin to the point of destination. Rates charged under transit privileges are lower than the combination rates. Depending on the extent and nature of the handling at the intermediate point, the applicable transit privilege might be a "joint through single factor" rate, or the applicable single factor rate plus a "stop-off" charge. Transit privileges are conditioned upon shipping a commodity pursuant to appropriate shipping instructions provided for in the carrier's tariffs, and upon meeting other specified shipping requirements, including weight minima per carload.

The facts in this case are as follows:

General Motors agreed to ship household appliances from Moraine, Ohio to the West Coast with an intermediate stop in Clearfield, Utah. The Plaintiff prepaid charges based on a joint-through rate applicable to a carload minimum of 18,000 pounds. After a tonnage increase in Clearfield, the railroad refunded to the Plaintiff, in accordance with its tariff provisions, the difference between the higher prepaid amount and a lower rate applicable to a carload minimum of 30,000 pounds. The rates charged were applied on what is known as a group-to-group basis.[1]

The shipment was consigned to the Plaintiff's agent in Clearfield for storage-in-transit. The cars were stopped in Clearfield. The lading was not stored, but was reforwarded by the agent as consignor on a new bill of lading.

Approximately three years later, the carriers reevaluated the shipping charges and demanded payment of an

1. Moraine is located in that part of the United States defined in the tariffs as origin group C, and Clearfield and the ultimate West Coast destinations fall within groups which take the same level of rates from origin group C. Thus, the joint-through rates from Moraine to Clearfield were the same as the joint-through rates to all the ultimate West Coast destinations.

undercharge from the Plaintiff. The carriers demanded payment of the moneys refunded plus a local rate charged from Clearfield to the West Coast, treating the shipment as one to which combination rates were applicable. The carriers claimed that neither the joint-through, single-factor rate, nor the joint-through rate plus a stop-off were applicable to the Plaintiff's shipment because the shipping instructions were defective and because the cars in question were not completely unloaded. When the Plaintiff learned that the carrier's interpretation of the appropriate tariff provisions conflicted with its own, it issued "corrected" bills of lading, changing the consignee and destination and changing the instructions from "STGE IN TRANSIT" to "STOP OFF: CLEARFIELD UTAH P/U FREEPORT DIST CENTER AGENTS FOR FRIGIDAIRE DIV. GMC". The Plaintiff paid the undercharge claimed although it did not agree with the carrier's tariff interpretation. Subsequently, the Plaintiff served upon the carriers a claim for the difference between the joint-through rate plus a stop-off charge and the combination rate which the Plaintiff had paid.

The Plaintiff also filed suit with the I.C.C. claiming a right to the overcharge claims. The I.C.C. appointed a hearing examiner who issued a recommended report and order on March 18, 1970 which, in effect, denied the Plaintiff's claim.

On October 8, 1970, Review Board Number 4 of the Commission agreed that Plaintiff had failed to show the combination rates were inapplicable, unjust or unreasonable. In its order and decision—commonly referred to as a DANDO—the Board held, except for one minor correction, that there were no material errors in the statement and evaluation of the facts, conclusions of law and findings, and no material matters of fact or law inadequately considered, and it adopted the report of the hearing examiner as its own.

On February 23, 1971, Division 2 of the Commission, acting as an Appellate Division, denied Plaintiff's petition for reconsideration and oral argument. This suit was then started and is now before this court on cross-motions for summary judgment.

The Plaintiff challenges the Commission's decision on three grounds:

1) Plaintiff maintains that the rates charged were not applicable to its shipment and that the carriers therefore violated Section 6(7) of the Interstate Commerce Act, 49 U.S.C. § 6(7).[2]

2) Plaintiff alleges that the rates charged were unreasonable and in violation of Section 1(5) of the Interstate Commerce Act, 49 U.S.C. § 1(5).[3]

3) Finally, Plaintiff challenges the sufficiency of the procedure employed by the Commission in adopting its decision. The Plaintiff claims that the DANDO was in violation of Section 14(1) of the Interstate Commerce Act, 49 U.S.C. § 14(1), Section 556 and 557 of the Administrative Procedure Act, 5 U.S.C. §§ 556 and 557.[4]

2. That section provides, in pertinent part:

"No carrier, unless otherwise provided by this part, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time . . ."

3. That section provides:
"All charges made for any service rendered or to be rendered in the transportation of passengers or property, or in connection therewith, shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful."

4. Section 14(1) of the Interstate Commerce Act provides:
"[That] whenever an investigation shall be made by said Commission, it shall be

■ The scope of review by this court of a final order of the Interstate Commerce Commission is limited to determining whether there is substantial evidence on the whole record to support the Commission's decision, and to determining whether the Commission's orders correctly apply the proper rules of law. "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 694, 78 L.Ed. 1260 (1934) (Cardozo). See also, United States v. I. C. C., 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949). Keeping these limitations in mind, the Plaintiff's exceptions to the Commission's decision will be considered separately.

## I—THE APPLICABILITY ISSUE

The Plaintiff contends that the Commission erred in finding that combination rates were applicable to its shipments and that such rates did not violate Section 6 of the Act. It is Plaintiff's position, first, that its shipment was entitled to the transit privilege at a through single-factor rate.

The tariff rules and regulations applying to the joint-through, single-factor transit privilege which Plaintiff seeks require that the cars carrying the shipment be unloaded at the transit station (Clearfield):

Item 140: (exh 38):

"(a) The transit privileges will apply only on shipments that are completely unloaded from cars at transit station and only when loaded out of the same transit house into which the shipment was originally placed except . . . in the case of an actual transfer as provided in Item 160, paragraph (a) or (sic) Part B thereof."

Plaintiff acknowledges that there was no unloading at Clearfield, but maintains that the exception for "the case of an actual transfer" applies. As Plaintiff had interpreted the tariff, a transfer of billing from Plaintiff to its agent in Clearfield satisfied the requirements of this provision. However, the rules and regulations governing the application of this exception require a form of assignment which Plaintiff did not make (see Exhibit 40 setting forth ITEM 160–C, part B(a) of the tariff). Plaintiff admits not having conformed to this requirement, and the examiner concluded

its duty to make a report in writing in respect thereto, which shall state the conclusions of the Commission, together with its decision, order, or requirement in the premises; and in case damages are awarded, such report shall include the findings of fact on which the award is made." (49 U.S.C. § 14(1))

Section 556 of the Administrative Procedure Act provides that:

"A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence." (5 U.S.C. § 556)

Section 557 of the Administrative Procedure Act provides in pertinent part:

"(c) Before a recommended, initial, or tentative decision, or a decision on agency review of the decision of subordinate employees, the parties are entitled to a reasonable opportunity to submit for the consideration of the employees participating in the decisions—

(1) proposed findings and conclusions; or

(2) exceptions to the decisions or recommended decisions of subordinate employees or to tentative agency decisions; and

(3) supporting reasons for the exceptions or proposed findings or conclusions.

The record shall show the ruling on each finding, conclusion, or exception presented. All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of—

(A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record; and

(B) the appropriate rule, order, sanction, relief or denial thereof." (5 U.S.C. § 557)

that, for this reason, it was not necessary to consider the merits of Plaintiff's tariff interpretation.

■ The law seems clear that transit being a privilege, it applies only if the conditions prescribed with reference to it are met. "When a transit privilege is given by express authorization in a tariff or quotation, all conditions and limitations prescribed with reference to it must be strictly observed". Gulf, Mobile and Ohio Railroad Co. v. United States, 312 F.2d 921, 925, 160 Ct.Cl. 493 (1963). "[A] transit privilege is not a matter of right; and all conditions and limitations prescribed with reference to it must be observed." Chicago and N. W. R. Co. v. Connor Lumber & Land Co., 212 F.2d 712, 714 (7th Cir. 1954). Since Plaintiff did not make the form of assignment required in ITEM 160, the examiner's conclusion that Plaintiff was not entitled to the transit privilege was correct.

Plaintiff, as an alternative to its contention that it was entitled to transit privileges at a through single-factor rate, claims to be entitled to the benefits of "stop-off" provisions in the Intervening Defendants' individual tariffs. Under these provisions, (referred to at page 5 of Exhibit 50) a shipper is charged a through rate plus a $22.00 per car stop-off charge. The total thus arrived at is less than the combined rate ultimately paid by Plaintiff.

The stop-off provisions contemplate stop-off for partial unloading, but the tariff also provides:

"Note—A car stopped for partial unloading in accordance with billing instructions and released without any materials being removed therefrom will be counted as a stop under this rule and subject to the charge for such stop." (exh 50, p. 5)

Thus, actual unloading is not necessary for the stop-off provision to apply. However, the Plaintiff's shipment as originally billed carried instructions for "storage-in-transit" which was not the proper billing for the stop-off tariff. After learning from the carriers that the transit privilege did not apply to Plaintiff's shipment, Plaintiff issued a "corrected" set of bills of lading, three years after the shipment had been made under the original bills. The corrected bills of lading carried instructions for a "stop-off" in Clearfield, rather than "storage-in-transit". The "stop-off" instruction is the one contemplated by the stop-off provisions in the tariff. (Page 11 Government's brief) [Page 21 Plaintiff's brief].

The examiner found these corrections were without legal effect, citing as authority Calkins, Augsbury & Miken v. Michigan Central Railroad Co., 129 I.C. C. 475. The examiner also state that "even if the bill of lading could be changed after the completion of the movement so as to affect the application of the tariff, plaintiff's change could not be given effect because it is contrary to fact". (Page 6, Exhibit 50). This conclusion was based on the examiner's understanding of the "stop-off" language as contemplating that the unloaded portion has reached its final destination. Since the Plaintiff's shipment was intended from the outset to continue in its entirety to its West Coast destination, the hearing examiner decided that "stop-off" did not accurately describe the shipment.

Plaintiff asserts that its post-hoc change of billing was "in conformance with a long recognized and lawful practice" and that *Calkins* is distinguishable from this case. Plaintiff maintains, furthermore, that the examiner's interpretation of the stop-off tariff is wrong as a matter of law.

■ This court finds that it is unnecessary to consider the merits of Plaintiff's interpretation of the stop-off tariff because its post-hoc change of billing was without effect, as found by the examiner. In Calkins, Augsbury & Miken v. Michigan Central Railroad Co., *supra,* the shipper sought the benefit of rates lower than those he paid on a shipment

of sheep. The tariff with regard to the lower rate provided as follows:

"These rates only apply when a certification is presented by the shipper that the stock is intended for feeding purposes and not for slaughter." 129 I.C.C. at 475

The shipper presented the required certificate after the shipment had been made. The Commission found that the higher rate was applicable because the subsequent submission of the certificate was not in compliance with the tariff rule.

"A reasonable interpretation of [the lower tariff] provision requires that the certificate be presented at a time not later than the tendering of the shipments. As the provision reads, the shipper was required to present a certificate that the stock 'is intended for feeding purposes'. This must relate, we think to the time of movement, and a certificate presented subsequent to the movement would not serve the purpose." 129 I.C.C. at 475

Here, Plaintiff argues that its shipment was entitled to the lower stop-off rate by virtue of the following language in the stop-off tariff: Item 280-B

"Note—A car *stopped for partial unloading in accordance with billing instructions* and released without any materials being removed therefrom will be counted as a stop under this rule and subject to the charge for such stop." (emphasis supplied)

A reasonable interpretation of this language is that the billing instructions for stop-off be issued not later than the time the shipment is stopped. The shipper was required to stop "for partial unloading in accordance with billing instructions". Since the bill of lading did not designate "stop-off for partial unloading" until three years after the shipment was made, the tariff requirement that the carloads be "stopped for partial unloading in accordance with billing instructions" could not have been complied with. As in the *Calkins* case, the tariff, insofar as the bill of lading is concerned, must relate to the time the car was stopped.

While it is true that a post-hoc change in billing is not per se ineffective, it appears that the circumstances of this case are readily distinguishable from the cases cited to the court by Plaintiff in support of its position that the corrections here were effective. Plaintiff cites Exposition Cotton Mills v. Southern Railway Co. et al, 234 I.C.C. 441 (1939) and Southgate Brokerage Co., Inc. v. Lehigh Valley Railroad Co., 274 I.C.C. 245 (1949). In both cases, more than one bill of lading had inadvertently been issued for the same shipment. The Commission decided that the shipper should not be denied the otherwise applicable rate in spite of the inadvertent extra billing. The Commission found, in the first place, that the tariff rate sought by the shipper was not, by the terms of the tariff, inapplicable where more than one bill of lading was issued. The Commission found, furthermore, that the carrier itself had been negligent in issuing more than one bill of lading. In Lone Star Gas Co. v. Alton & S. R. Co., 147 I.C.C. 261 (1929), the only issue before the Commissioner was the reasonableness of the rate and not, as here, the effect of a billing change on the applicability of the rate. In Mead Corp. v. Baltimore & Ohio Railroad Co., 308 I.C.C. 790 (1959), on the issue of applicability of the rate, a defective bill of lading was found to be fatal.

Accordingly, the examiner's finding that Plaintiff's attempted "correction" of the bill of lading was without effect was proper. As Plaintiff recognizes, stop-off is a transit privilege. It follows that "all conditions and limitations prescribed with reference to it must be strictly observed" in order for a shipper to avail himself of its benefits. Gulf, Mobile and Ohio Railroad Co. v. United States, 312 F.2d 921, 925, 160 Ct.Cl. 493 (1963). Having failed to comply with the requirements for the stop-off privilege, the Plaintiff is not entitled to its benefits, and the examiner was correct in so finding.

## II—THE REASONABLENESS ISSUE

Plaintiff alleges that the rates charged by the carriers were unreasonable in violation of section 1(5) of the Interstate Commerce Act, 49 U.S.C. § 1(5).

Plaintiff contends, first, that the combination rates charged for its shipment are, as a matter of law, unreasonable because they are greater than the joint-through rates voluntarily established by the carriers for the same commodity over the same route from the same origin to the same destination. The latter rate, Plaintiff asserts, is the measure of reasonableness against which to test the rate charged, and a showing that the rate charged is greater than the joint-through rate, with no difference in competitive factors or transportation conditions, is a prima facie showing of unreasonableness. Since the Defendants offered no rebuttal evidence, the Plaintiff maintains that the examiner should have found the rates to be unreasonable.

The hearing examiner found that there was no evidence that the joint-through rate was on a maximum reasonable basis and that a showing that the combination rate is greater than the joint-through rate does not sustain a finding of unreasonableness. The examiner distinguished cases, cited to him by Plaintiff, which were alleged to stand for Plaintiff's proposition that combination rates higher than joint-through rates maintained by rail carriers over the same routes are unreasonable per se. The examiner found that these cases involved · "special circumstances" which were the basis of their holdings, and held that they did not stand for the general proposition asserted by Plaintiff.

In the opinion of this court, the examiner's assessment of the case law on the issue was correct. In J. Howard Smith, Inc. v. Central Railroad Company of New Jersey et al, 306 I.C.C. 570 (1959), a case strongly urged by Plaintiff as supporting its position, a shipment of fishmeal and fish products was consigned by complainant for storage in transit at an intermediate point. At the intermediate point, the smell from the shipment became so obnoxious that railroad workers threatened to go on strike. To help the railroad, the complainant located a warehouse at the destination point and reconsigned the fishmeal to that point. The carrier assessed charges on a combination basis from point of origin to the intermediate point, then from the intermediate point to the point of destination. The shipper sought the lower through rate. The Commission found for the complainant, grounding its decision on the special circumstances of the case:

> "To avoid an unnecessary strike, harmful to the Lackawana and to the city of Scranton (the intermediate point), which depends upon that carrier for essential transportation and employment, the complainant, without apparent benefit to itself, arranged for removal of the 15 carloads from Scranton. It was under no legal obligation to do so, because the storage at that point was authorized in the defendant's tariffs. *In these · circumstances*, it appears to us that it was unjust and unreasonable to collect charges based on a rate higher than that which would have applied had the shipments moved over the more direct route from Belford to Frankfurt."
>
> 306 I.C.C. at 572 (emphasis added)

Clearly the examiner correctly concluded that special circumstances distinguished the *Smith* case and that *Smith* was not good authority for the general proposition that combination rates are per se unreasonable to the extent they exceed joint-through rates for the same commodity over the same route.

Nor are the other cases urged by Plaintiff on this point any more helpful. Apache Powder Co. v. Atchison, Topeka and Santa Fe Railway Co., 299 I.C.C. 649, 654 (1957) did not involve a comparison of combination rates with joint-through rates. The comparisons made in the *Apache Powder* case were, rather, between rates over different but similar routes. In Geo. A. Hormel & Co., v. Atchison, Topeka and Santa Fe Railway

Co., 263 I.C.C. 9, 35, 60 (1945), the Commission was faced with a problem exactly opposite to the one here. There, the combination rate was lower than the joint-through rate. The Commission offered no opinion on the possible reasonableness of combination rates in excess of joint-through rates. In Lone Star Gas Co. v. Alton & S. R. Co., 147 I.C.C. 261, 262 (1928), charges were found to be unreasonable to the extent they covered a portion of the route not traveled by the complainant because of a diversion. None of the aforementioned cases support the conclusion that the examiner was wrong as a matter of law in finding that combination rates are not per se unreasonable to the extent they exceed joint-through rates.

██ Plaintiff also contends that the examiner erred in not finding that the rates charged by Defendant carriers from Clearfield to the West Coast destination at Portland were unreasonable in that those rates were shown to be higher than rates for the same commodities over larger distances from Moraine than the distance from Clearfield to Portland. On this issue, the examiner stated:

"The record does not show whether the compared rates from Moraine are, like the assailed rate, constructed on a group basis, or if so, what the average distances are between the groups. The assailed rate is a group rate, and it applies not only from Moraine to Portland, Oakland, and Los Angeles, but also to such more distant destinations as Seattle, and from more distant origins in group J. There is no evidence comparing the transportation circumstances and conditions that obtain between Utah and West Coast destinations with those between Ohio and Kansas, Oklahoma or other destinations for which the compared rates are shown."

It is Plaintiff's position that "[i]t is pertinent to compare rates constructed on the group principle with other rates, such as those used for comparative purposes by Complainant employing rate basis miles . . . where, as here the record contains evidence regarding movements on the compared rates". [Plaintiff's reply brief, page 32]. In support of this proposition, Plaintiff cites Iron and Steel Billets, Pittsburgh to Cleveland, 270 I.C.C. 473 (1948). In that case, the Commission found that the group rates charged by the defendant railroads from the Pittsburgh group to the Cleveland group and from the Beaver (Pa.) group to the Cleveland group were unreasonable. This finding was based on comparisons with other rates, some of which were group rates (e. g. Pittsburgh to Canton group) and others of which were non-group rates. The Commission stated, at page 482, that:

"The value of the comparisons of record by the opposing parties is minimized somewhat by their limited selection of origins and destinations within areas from and to which group rates on billets and rods are said to apply; but these comparisons nevertheless are pertinent."

Here, non-group rates are the exclusive basis of comparison and are not offered merely to supplement group rate comparisons already on record. If, as the Commission found in the *Iron and Steel Billets* case, the value of comparison is minimized by a limited selection of group rates, then the value would seem to be negated by a complete absence of such rates. Thus the hearing examiner was correct in finding that the non-group comparisons offered were inadequate to support a finding of unreasonableness of group rates. Since the hearing examiner's conclusion is supported on this basis, it is unnecessary to consider the Plaintiff's challenge to the sufficiency of his additional reasons for so finding.

## III—THE PROCEDURAL ISSUE

Plaintiff contends that the Commission, in adopting the DANDO report, without making independent findings of its own, did not comply with the procedural requirements of Section 14(1) of the Interstate Commerce Act (49 U.S.C.

§ 14(1) and sections 556 and 557(c) of the Administrative Procedure Act (5 U.S.C. §§ 556, 557(c)).  Section 14(1) of the Interstate Commerce Act requires the Commission, after an investigation in connection with a complaint against a carrier, to make a report in writing stating its conclusions.  The Administrative Procedure Act requires that the Commission base its findings on the consideration of "reliable, probative, and substantial evidence", (5 U.S.C. § 556).  The Act also outlines the matter to be included in the Commission's decision-making process, and provides the parties with an opportunity to submit to the Commission proposed findings, exceptions to decisions of subordinate employees or tentative agency decisions and reasons for such exceptions.  The Commission's decisions under the Act must include findings and conclusions on all issues presented on the record.

■    The Plaintiff does not contend that these provisions prohibit the adoption by the Commission of a hearing examiner's report.  The Plaintiff's position is that the DANDO device is only permissible when the basic findings and considerations of the hearing examiner are clearly stated and free of error.  It is clear that, when the Commission adopts as its own the finding of the hearing examiner, those findings must provide the reviewing court "with a basis for determining whether the result reached comports with the statutory standards  .  .  .  ", Saginaw Transfer Co. v. United States, 275 F.Supp. 585, 589 (E.D.Mich.N.D.1967).  There must be a disclosure in the report that the examiner "put the proposed rates to a test of the controlling statutory provisions .  .  .  ".  *Id.* at 588.  Plaintiff attacks the examiner's report alleging the following defects:

1) the hearing examiner's finding that stop-off rate was inapplicable was wrong as a matter of law because it ignored the terms of the tariff permitting the rate;

2) the finding that stop-off was inapplicable was wrong as a matter of fact because it was based on unsubstantiated opinion;

3) the hearing examiner's finding that rates were not shown to be unjust or unreasonable was based on an erroneous application of the law; and

4) the hearing examiner did not explain his failure to apply the correct rule of law.

■    It appears to this court, as discussed above, that the hearing examiner's report was not defective in any of the ways alleged.  His findings as to the applicability and the reasonableness of the rates conformed with the controlling statutory provisions.  They were clearly stated and grounded on articulated authority in a manner which made it possible for the reviewing court to ascertain the basis of the examiner's findings.  It appears to the court that, apart from the conclusions reached by the examiner, which were correct, the procedures adopted by the Commission conformed to the applicable standards of both the Interstate Commerce Act and the Administrative Procedure Act.  In short, the Commission's findings were not procedurally defective.

Having found that the Plaintiff was charged the applicable rates, that those rates were reasonable, and that the Commission's findings were procedurally adequate, the court is of the opinion that the Defendants' motions for summary judgment should be granted, and the Plaintiff's motion for summary judgment should be denied.

It is so ordered.